## COURT OF APPEALS.

### November 12, 1918.

## THE PEOPLE, Respondent, v. VINCENZO ESPOSITO.

(224 N. Y. 370.)

MURDER—UNFAIR TRIAL—WHEN DEFENDANT ENTITLED TO NEW TRIAL
BECAUSE OF CONDUCT OF DISTRICT ATTORNEY.

On the trial of defendant for murder in the first degree, of which crime he was convicted, the district attorney not only repeatedly offered and insisted upon the admissibility of evidence which had been excluded, but in submitting the cause to the jury referred to and commented upon the matters which had been so expressly excluded from their consideration. He further, by way of argument for the conviction of the defendant, stated that while defendant could appeal from their decision to the Court of Appeals, the People had no right to appeal. *Held,* that the defendant did not have a fair trial, and substantial justice requires that his conviction be reversed and he be given another opportunity under fair and proper conditions to defend himself.

APPEAL from a judgment of the Supreme Court, rendered December 22, 1917, at a Trial Term for the county of Schenectady, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*James A. Leary* and *Walter A. Fullerton,* for appellant. The district attorney's conduct was improper and prejudicial. (People v. Freeman, 203 N. Y. 267; People v. Molineux, 168 N. Y. 264; People v. Brown, 110 App. Div. 490; 188 N. Y. 554; People v. Cascone, 185 N. Y. 317; Rost v. B. H. R. R. Co., 10 App. Div. 477; Hoyt v. Davis Mfg. Co., 112 App. Div. 759; People v. Scanlon, 132 App. Div. 528; Smith v. L. V. R. R. Co., 177 N. Y. 379; People v. Fielding, 158 N. Y. 542; People v. Faber, 199 N. Y. 256.)

*John R. Parker, District Attorney,* for respondent. The district attorney's conduct was not improper or prejudicial. (Underhill on Crim. Ev., §§ 50, 90, 375; Bishop on Crim. Pro., § 151; Knickerbocker v. People, 43 N. Y. 177; People v. Buddensieck, 103 N. Y. 487.)

HISCOCK, Ch. J.:

The defendant has been convicted of murder in the first degree because he shot and killed a woman named Giovannina Pasquerella. In close sequence of time he shot and killed first her husband and then herself and wounded two other persons. All of this occurred in a building which was used on the ground floor for a store kept by the husband and in the upper stories for dwelling apartments. In furtherance of the claim that the defendant killed deceased under such circumstances as made his act murder in the first degree, it was and is asserted as a matter of inference from certain circumstances that the defendant was influenced to do what he did by the motive of robbery.

There was no dispute that the defendant killed the deceased. There was vigorous dispute that there were motive and premeditation and deliberation in his acts. On the contrary, it was claimed in his behalf, on the evidence, that as the result of natural defects or of temporary intoxication the defendant was in a condition of frenzy and of mental impairment which made him incapable of exercising those processes of mind which are essential to the commission of the crime of which he has been convicted. For the purpose of supporting these claims and this evidence in his behalf substantial testimony was given of previous good character and peaceable disposition.

The issues thus formed were submitted to the jury for consideration and determination. There certainly was nothing in defendant's personality and situation as portrayed to us by the testimony or in the acts which he committed at the time he killed deceased which was calculated unduly to arouse any sympathy or

consideration for him. On the other hand the very savagery of his conduct was calculated involuntarily to excite in the minds of jurymen a tendency to place upon his acts the worst and most criminal construction which the evidence permitted. That evidence, however, forced upon their minds a grave doubt whether he was guilty of murder in the first degree is made sufficiently apparent by the fact that after being in deliberation for eight and one-half hours the jury had failed to agree and returned for further instructions in respect of the difference between murder in the first and second degrees and that it was only after another hour of deliberation that they finally returned with the verdict which is the basis of the present judgment.

Under the circumstances disclosed by the foregoing brief summary it is manifest that the defendant was entitled to a scrupulously fair trial. It was the duty of the court and of the district attorney to see to it that his fate which hung in the balance for so long was not prejudiced or settled by any forbidden or untoward methods. It was immaterial that one might think that the defendant was guilty of the highest crime of which he could be convicted and that there was no danger that such a conviction would result in meting out to him greater punishment than he deserved. Such thoughts as these, if they existed, had no place in the presence of that fundamental principle of our jurisprudence that a man shall not be punished for an act, however abhorrent and criminal it may seem to be, until he has been justly and fairly convicted.

The trial which defendant actually secured was far from being of the kind indicated. The district attorney repeatedly violated the rules of fairness and good conduct and while the learned trial judge, when objection was made, by his rulings mildly checked the misconduct, there was utterly lacking that sternness of correction which alike would have stopped further repetition and would have erased from the minds of the jury any impressions produced by what had gone before. We shall

not attempt to recapitulate at length all of the acts of the district attorney. Reference will be made to enough of them to show the basis for the view which we take, that the judgment which has been rendered should be reversed.

The defendant's name is Esposito. It is said that this means "bastard." If this be so it certainly did not subject the defendant to any reproach for which he was responsible. The district attorney in summing up said, "If any of you know what the meaning of Esposito is, I wish you would tell each other." Of course there is no means of telling whether any juryman did attempt to fulfill this injunction of the district attorney and impart to his fellows information that even the name of defendant was unfavorable to his character. There can be no doubt, however, that necessarily and inevitably the remarks of the district attorney would be understood to imply that there was something in the defendant's name which, if understood, would be prejudicial to him.

The defendant is an alien and apparently he was within the draft age. On his cross-examination the district attorney attempted to show that he claimed exemption because he was a resident alien. The court permitted this inquiry but it failed to elicit the information which the district attorney desired. Subsequently he attempted to establish the identity of a paper wherein defendant claimed such exemption but again failed. Nevertheless in summing up he said, "Why did not he answer about the draft questions when he was on the stand, when shown the papers in regard to the draft?"

There was no suggestion that the defendant attempted by unlawful means to secure exemption or that he acted otherwise than in accordance with the privilege conferred by law upon resident aliens to secure exemption from selective service. Nevertheless it very well might be that some juryman would be prejudiced against an alien, who, enjoying the privileges of this country, was still unwilling to serve it. The evidence which it

was attempted to elicit was utterly incompetent and the proceeding of the district attorney could have had for its purpose no other than to appeal to the prejudices of such a juryman.

There were produced upon the trial by the district attorney several photographs taken soon after the murderous events which have been referred to and which it is said without dispute were gruesome portrayals of blood stains and of the deceased and her husband. When one of these photographs was offered in evidence the court after examining all of them ruled that he would sustain the objection to their admission and excluded them. Notwithstanding this ruling the district attorney four times thereafter in the course of the examination of witnesses referred to or offered in evidence some one of these photographs; and then notwithstanding the direction of the court not to refer to them again, in summing up he spoke as follows: " I tried to bring her photograph (that of the deceased) taken on the day she was shot as a part of that proof, and, gentlemen of the jury, that cowardly defendant would not allow his attorney to allow this picture in evidence. Is that man here to face the crime he has committed? Has he been compelled to face it? No, he has not been compelled to face it as fully as it could have been. The court and the law has been charitable to him. He has not been compelled to face any blood spots. He has not even been compelled to face the picture of the person he shot. No, he has not been compelled to face anything like that. He would not even allow it to be presented here to you.   *   *   *   We had a picture taken of it (the blood where the body of deceased was found) the day of the murder, a picture that no man could lie out of that the blood could not have been there as shown in that picture. We have not been able to present it, you know, because the Court will tell you, he may tell you and he may not consider it worth while to tell you that it is kept from you so that it might not inflame the jury."

We are unable to see how these photographs, whatever they depicted, could have been more inflammatory of the jury than these remarks of the district attorney made after rulings which in effect forbade him to make any reference to them.

No other weapon was used in killing the deceased than a pistol. The district attorney attempted to show that a razor was found upon the person of defendant when he was arrested. This attempt was not coupled with any suggestion of testimony to connect the razor with the intent to commit the crime in question and thereby strengthen the People's claim of premeditation and deliberation. The court ruled out the evidence of its possession by defendant. Yet notwithstanding this ruling the district attorney thereafter four times attempted to examine witnesses concerning the possession of the razor by the defendant, and although the court upon each attempt ruled out the evidence in summing up the case he said, " Why did he have that old razor in his pocket when they found him at the shanty and took him back to police headquarters? What did he carry that for? "

His suggestion was an attempt to lodge in the minds of the jury the idea that evidence, which as a matter of fact was not before them at all, indicated a well-determined plan to commit the murder for which defendant was being tried and, therefore, indicated the necessary premeditation and deliberation.

Again in summing up the district attorney said: " Your work (referring to the jury) is merely the part of a machine. Your only duty is to decide what has been presented here. What does it add up to. You are to decide this as two and two makes four,  *  *  *  and the problem that is presented here is so apparent that it is not any harder for anyone to decide than the simple question, does two and two make four? So I say as prosecuting attorney of Schenectady county, I would hate to walk the streets of Schenectady county in the sight of

these people if I had failed or flinched in my duty in any respect in connection with this cowardly murder. Now I say to you, gentlemen, go in there and decide it as men of affairs. I know as men of affairs you do not believe in cock and bull stories. I do not expect you to decide this case as men of affairs on cock and bull stories when you go into your jury room.

This was clearly an attempt to influence the action of the jury by what they might think would be public clamor rather than by the evidence.

And then finally in summing up the district attorney used this significant language: " I wish also to call your attention here to the fact that this defendant can appeal from this decision of yours to the Court of Appeals but the prosecution cannot."

That is, in subtle manner it was suggested to the jury that because of his right to appeal no ultimate harm could come to defendant if they should through error or intention relax somewhat in the application of those principles which ought to govern their deliberations in his favor and that this view was all the more pertinent because of the fact that no error against the People could thus be corrected.

The statement of the occurrences which have been thus detailed, so clearly shows upon its face their prejudicial importance that nothing can be added or gained by discussion. The district attorney, led, undoubtedly, by well-intentioned though misguided zeal, utilized his position to impair the rights of the defendant by unjustifiable influences and arguments of so grave a character that we ought not to assume that they were unheeded by the jury and without influence upon their final action. The defendant has not had the trial he was entitled to and substantial justice requires that his conviction shall be reversed and that he be given another opportunity under fair and proper conditions to defend himself.

The judgment of conviction should be reversed and a new trial granted.

CHASE, COLLIN, HOGAN and McLAUGHLIN, JJ., concur; CUDDEBACK, J., dissents; CRANE, J., absent.

Judgment of conviction reversed, etc.