## HALL v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1919.)

### No. 1683.

1. CRIMINAL LAW ⬤⟿369(1)—VIOLATION OF ESPIONAGE ACT—EVIDENCE—OTHER OFFENSES.

On trial of a defendant for violation of the Espionage Act (Comp. St. 1918, §§ 10212a–10212h), by making false reports and doing other acts with intent to interfere with the prosecution of the war, it was prejudicial error to admit evidence of threats made by him against the President, not connected with the acts with which he was charged.

2. CRIMINAL LAW ⬤⟿721½(1)—TRIAL—ARGUMENT OF COUNSEL.

Argument by a district attorney to the jury, based upon his statement that no friend of defendant or citizen had appeared to testify in his behalf, or objected to his prosecution, evidence of which, if offered, would have been incompetent, *held* improper.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Joseph T. Johnson, Judge.

Criminal prosecution by the United States against J. K. Hall. Judgment of conviction, and defendant brings error. Reversed.

A. H. Dagnall, of Anderson, S. C., for plaintiff in error.

J. William Thurmond, U. S. Atty., of Edgefield, S. C. (C. G. Wyche, Asst. U. S. Atty., of Greenville, S. C., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The plaintiff in error (defendant below) was tried in the United States District Court for the Western District of South Carolina on an indictment containing five counts.

In the first count it is charged that the defendant did "unlawfully, willfully, and feloniously make and convey certain false reports and false statements * * * with intent to interfere with the operation and success of the military and naval forces of the United States. * * *"

The second count charged a violation of Act June 15, 1917, c. 30, tit. 1, § 3, 40 Stat. 217 (Comp. St. 1918, § 10212c); it being alleged that defendant "did unlawfully, willfully, knowingly, and feloniously attempt to cause insubordination, disloyalty, mutiny and refusal of duty in the military and naval forces of the United States. * * *"

The third count charged a violation of the same act, viz. That defendant "did unlawfully, knowingly, and feloniously obstruct the re-

cruiting and enlistment service of the United States, to the injury of the United States. * * * ”

In the fourth count a violation of Act May 16, 1918, c. 75, § 1 (Comp. St. 1918, § 10212c), is charged, to wit, that defendant "did unlawfully, willfully, and feloniously make and convey false reports and false statements, with attempt to obstruct the sale by the United States of bonds of the United States. * * * ”

In the fifth count it is charged that the defendant violated Act Feb. 14, 1917, c. 64, 39 Stat. 919 (Comp. St. 1918, § 10200a), in that he "did willfully, unlawfully, and feloniously make a certain threat to inflict bodily harm upon the President of the United States. * * * ”

Counsel for the defendant demurred to the indictment and moved to quash the same upon the following grounds:

"Because the indictment contained five counts which were improperly joined, the five counts alleging different offenses, not connected in time, and not being of the same class of offenses, and for the additional reason that the defendant is alleged to have violated counts 1, 2, and 3 on the 15th day of May, 1918, which said counts are based on Act June 15, 1917, known as the 'Espionage Law,' which had not been enacted by Congress, and therefore the defendant would be on trial for having committed an offense prior to the passage of the act creating the offense, as testimony admitted tending to prove one count would be considered by the jury on the other counts, thus in effect trying the defendant for an act which was afterwards made a crime by Congress, but which was not a crime at the time."

While the court overruled the demurrer and the motion to quash, nevertheless it held that there was an improper joinder of the fifth count, and accordingly the fifth count was eliminated.

[1] The second assignment of error is in the following language:

"That the court erred in permitting and allowing witness Floyd, over the objection of the defendant, to testify that he had heard the defendant make threats against the President of the United States and that he had heard the defendant say he would like to get an opportunity of putting a bullet through Woodrow Wilson's heart, this threat not being connected in any way with the offense for which the defendant was being tried, and was incompetent, irrelevant, and highly prejudicial."

The third assignment of error is in practically the same language as the second, with the exception that it relates to the testimony of Metta Batson, in which she was permitted to testify, over the objection of counsel for defendant, that she, too, had heard defendant make threats against the President of the United States, saying, among other things, he would like to shoot the President. The evidence of these witnesses was objected to upon the ground that it tended to prejudice the minds of the jurors against the defendant. Counsel insisted, further, that it did not tend to prove any of the offenses for which defendant was being tried, and that any proof that the defendant had committed other offenses was not only "incompetent, but highly prejudicial."

As we have stated, the fifth count of the indictment, which, among other things, charged that the defendant had threatened to inflict bodily harm on the President of the United States, was eliminated. Therefore any evidence tending to show that the defendant had made threats against the President unconnected with the offenses of which

he was convicted became wholly immaterial to the issues then being tried, and could only create the impression that, in addition to the other offenses charged, defendant was disloyal to the government and he had so far forgotten the rules of propriety as to attack the President. The introduction of this evidence would, of necessity, tend to create a false impression upon the minds of the jury, who would unconsciously reach the conclusion that one guilty of making such an unjustified attack upon the President must naturally be guilty of offenses wherein he was charged with being unmindful of the duty that he owed his country. The Circuit Court of Appeals for the First Circuit in the case of Thompson v. United States, 144 Fed. 16, 75 C. C. A. 174, said:

"There is no occasion to question the general rule which excludes all evidence of collateral offenses. Such rule is often called the 'Rule of Logic,' because it is based upon the idea that evidence of the commission of one crime in and of itself has no legitimate tendency to prove the commission of another crime. This general rule in practice is, of course, more absolute when the offenses are of a different nature."

In the case of People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, the court said:

"This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt."

If this were not the rule, there would be no guaranty for the life or liberty of the individual, and this would be especially true in time of war, as in this instance, when the government is involved, or on other occasions when public sentiment might be aroused as to a particular question.

During the war with Germany the people of South Carolina, in common with the people of all other states, were intensely loyal and enthusiastic supporters of the President, who was not only the President of all the people, but also the Commander in Chief of our armies. This spirit was highly commendable. However, where one is charged with an offense even remotely involving his loyalty to the government, the slightest imprudent reference he might make as respects the President or any of the officials of the government would naturally be resented by the people, and the introduction of evidence tending to show that the accused had threatened to kill the President or had spoken of him in a disrespectful manner would be highly prejudicial, and the jurors, as we have stated, would unconsciously be more or less affected thereby in determining the guilt or innocence of the accused.

[2] The fourth assignment of error is as follows, that the court erred in allowing and permitting the United States attorney to say:

"Gentlemen of the jury, is it not a significant fact that defendant has failed to introduce a single witness in his behalf who has ever heard him make a patriotic utterance? Not a single friend or citizen has come here to

testify in his behalf. No man has interceded with the office of the United States attorney in his behalf. Could a man be innocent and be put on his trial without numerous friends and citizens protesting against it?"

It is insisted by counsel for defendant that the language of the district attorney was highly improper, placing as it did an unwarranted burden upon the defendant. In order to relieve the defendant from such burden his counsel requested the court to charge the jury as follows:

"Even if the defendant had offered testimony of patriotic utterances made by him to different persons that said testimony would have been incompetent and inadmissible, and the fact that the defendant had offered no such testimony, must not be taken into consideration by the jury."

The court refused to grant this request. The address of the district attorney to the jury above quoted was manifestly improper for the following reasons:

(a) If it had been offered as evidence, it would have been incompetent. Therefore it was error to permit the district attorney to base his argument upon a false premise, thereby imposing upon the defendant a burden not imposed upon him by law.

(b) The statement that no one had interceded with the office of the district attorney in his (the defendant's) behalf was improper, inasmuch as evidence tending to establish this fact would have been irrelevant and incompetent, if it had been introduced by the government. The fact that he had "been put upon his trial without numerous friends and citizens protesting against it" was wholly immaterial as to the issue then being tried, and if there had been an attempt on the part of the government to establish such alleged fact, no doubt the court below would have sustained the objection to the introduction of such testimony upon the grounds we have stated. Indeed, it is not the custom for citizens to protest against the prosecution of any one who has been indicted by a grand jury and placed upon his trial, even though there should be a general impression in the community that he is innocent. Such proceeding would be highly improper and at variance with the orderly procedure in the trial of cases. In other words, if this policy should ever prevail, it would be tantamount to substituting the judgment of the populace for that of the court and jury. We deem it proper to say, in passing, that a proceeding of this character at a time when we have just emerged from a contest wherein we sought to destroy autocracy and accomplish the freedom of mankind would be inconsistent to say the least.

At the conclusion of the court's charge counsel for the defendant again called attention to what he alleged to be improper argument, and requested the court to say to the jury that such charge was improper, and should not be considered as bearing upon the guilt or innocence of the defendant.

The record does not purport to give the exact language of the court in refusing to charge the jury as requested; however, counsel asserts in his brief that the court said:

"The defendant is being tried only on the testimony which has been introduced in evidence."

This language is not sufficiently broad to negative the statement made by the district attorney.

Where one is charged with a crime, he is presumed to be innocent until the contrary is shown by legal evidence sufficient to satisfy the jury of his guilt beyond a reasonable doubt; and this rule applies to the degraded and debased, as well as to those who possess a good character. The following statement in 12 Cyc. p. 384, is very much in point:

"The accused, however degraded or debased he may be, is presumed to be innocent of the particular offense charged until he is pronounced guilty on evidence which convinces the jury of his guilt beyond a reasonable doubt. The presumption of innocence accompanies the accused until verdict, and does not cease when the case is submitted to the jury."

The following cases sustain this rule: Agnew v. United States, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624; Coffin v. United States, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481.

In the case of Lowdon et al. v. United States, 149 Fed. 673, 79 C. C. A. 361, the court said:

"Where accused offered no evidence to prove his good character, and was therefore entitled to rely on a legal presumption that his character was good, it was prejudicial to accused for the prosecuting attorney, in making a strong appeal to the jury, to assume that defendant's character was bad because of his failure to prove the contrary; defendant's objection thereto having been overruled, and the district attorney not having withdrawn the argument."

In 2 Ruling Case Law, under title "Argument of Counsel" (page 420, § 17), it is stated:

"Counsel should never in the course of argument state facts that are based on his own personal knowledge only. If he desires to get such facts before the jury, he should take the stand and present them in a legitimate manner; for although, in the heat of argument, fervor and partisanship are to be expected from counsel, this cannot justify a departure from the field of argument and discussion of the facts disclosed by the evidence into the field of testimony to establish other facts."

In a time like this, when patriotism is at a high pitch and many people have to a certain extent lost their mental poise, courts and jurors should be extremely cautious when required to pass upon the rights of an individual charged with an offense affecting the welfare of the government.

In view of what we have said, we do not deem it necessary to discuss the other assignments of error. It follows that the court below should be reversed, and a new trial granted.

Reversed.