THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* STANLEY JOHNSON, Appellant.

Argued October 3, 1940; decided November 19, 1940.

*Richard T. Anderson* for appellant. 

*Theodore M. Coburn, District Attorney,* for respondent.

SEARS, J. During the late evening of January 1, 1940, the defendant Stanley Johnson shot and killed a woman named Elizabeth Dale in her home in the city of Auburn, N. Y. The grand jury indicted the defendant for the crime of murder in the first degree. The trial of the indictment began on the 29th day of January, 1940, and resulted in the conviction of the defendant of the crime charged on the 16th day of February. From the conviction the defendant has appealed to this court.

The victim of the shooting was a married woman separated from her husband and living with three children and her father. The defendant, who was twenty-four years of age, had been on terms of close friendship with her. Within the last few months before the shooting, however, another man, named Jesse Mayo, had been paying her attention. On the 1st day of January, 1940, the defendant spent the afternoon and early evening at the Dale house. During the afternoon Mayo came in and, soon leaving, arranged with Elizabeth Dale to keep an engagement elsewhere that evening with him. This she did, returning to her home with Mayo at about ten-thirty o'clock in the evening. Meanwhile, the defendant, leaving the Dale house at about eight o'clock, had gone to his own home and had his supper. He returned to the Dale house at about eleven o'clock and, finding the door locked and lights out, entered the house through a window in a toilet room, from which he entered a living room where the lights were out but where there was some radiance from a stove and a small radio receiver. When he entered, Mayo and Elizabeth Dale were seated

on a cot bed. Defendant, according to Mayo, turned the electric light on and off. He then left the room and got an automatic pistol which he had previously left elsewhere in the house, returned to the room and, after some angry words, fired a number of shots, at least seven, some of which struck Elizabeth Dale and caused her death, while one wounded Mayo. This brief summary of the immediate circumstances is sufficient for the purposes of this opinion. The facts stated stand substantially uncontroverted in the record.

The argument which defendant's counsel presented to the jury was based on other facts. The defendant offered proof that at the time of the shooting, he was suffering from disease, namely, cerebral syphilis, which, according to his contention, was such that he was laboring under such a defect of reason as " (1) not to know the nature and quality of the act he was doing " and " (2) not to know that the act was wrong " (Penal Law, § 1120), or, at least, was such as to render the defendant so incapable of deliberation or premeditation that his act could not constitute the crime of murder in the first degree. On this issue, experts were sworn on behalf of the defendant, whose testimony furnished support for his theory, while on the part of the People experts were sworn whose testimony supported the People's claim that the defendant was not suffering from cerebral syphilis at all and was in no respect laboring under a defect of reason.

The crime charged is of the most serious character known to our law, calling for the extreme punishment. Whatever may be our ideas as to the defendant's guilt, it is essential to the due administration of justice that he should have received a scrupulously fair trial. " It was the duty of the court and of the district attorney to see to it that his fate which hung in the balance * * * was not prejudiced or settled by any forbidden or untoward methods." (*People* v. *Esposito*, 224 N. Y. 370, 372; *People* v. *Teiper*, 186 App. Div. 830.)

We are furnished here with a record presenting such grave error at the very threshold of the trial as to make it

doubtful whether the jury could thereafter render a verdict with full appreciation of its responsibility. When the first prospective juror was called for examination, the following occurred: " Q. [by the District Attorney]: But do you know, Mrs. Burhans, that after the completion of the case of murder in the first degree, provided there is a verdict of guilty of murder in the first degree, then the law says in protection of a case of this nature that an appeal must be taken to the Court of Appeals, which is the highest court of our state, consisting of seven judges who must also pass upon that case. Did you know that? A. No, I didn't. Q. Well, I presume you naturally wouldn't be expected to because you people don't study law. Mr. Anderson [Counsel for the defendant]: I object to this line of examinat'on. Let's try the case on the facts first and let the appeal rest. It is not within the province of the jury to decide that. The Court: I will listen to his next question. It sounds like an introductory question, otherwise I will rule on it."

A little later the District Attorney asked: " Q. Do you know also, Mrs. Burhans, that in case of a verdict of guilty of murder in the first degree, as I have told you, that after the verdict of the jury is passed upon by the Court of Appeals consisting of seven judges, the highest court of this state, that if they agree with the verdict of the jury, even then there is another safeguard for all defendants —"

To this, again the counsel for the defendant objected and said: " Mr. Anderson [Counsel for the defendant]: I object as improper at this time and assuming too much, I believe — assuming a conviction is going to be had in this case and improper. The Court: I will permit the question. Mr. Anderson: Let's decide the facts and let the Trial Court determine. It is prejudicial. The Court: It is unusual but I will permit the question. Q.— and that is, there is a final appeal to the governor of the State of New York, who is the extreme power, even though the jury and the Court of Appeals have agreed that the verdict was correct, he still has the power to commute that sentence to life imprisonment. Did you know that? A. Yes."

This particular prospective juror was excused by the court. This line of questioning in slightly varying form followed with juryman after juryman.

On the examination of the twelfth prospective juror, who was accepted, the following occurred: Q. [by the District Attorney]: You heard my statement to the first juror here this morning in respect to protection to a defendant who is charged with an offense of this sort that is given under the law? A. Yes, sir. Q. In other words, the jury's verdict, if it is guilty of murder in the first degree, is not final? A. Yes. Q. But it goes to a higher Court, and from there, if they agree with the jury, finally to the governor, who has the right and power to commute that sentence? A. Yes, sir."

On the examination of the thirteenth prospective juror, the following occurred: " Q. Did you hear me speak when I spoke to the first juror this morning, about the protection that the law gives to a man tried for a crime of this sort? A. Yes. Q. You understand the jury's verdict is not final? A. Yes. Q. That if they say — Mr. Anderson [Counsel for the defendant]: I object to this line of examination as not final. It is final on the facts, if your Honor please. Mr. Coburn [District Attorney]: I object to the remark on the part of counsel. Mr. Anderson: I object to this line of questioning. We are trying a law suit and no appeal. Mr. Coburn: The law specifically states the Court of Appeals considers the facts and the law in a murder, first degree. Mr. Anderson: Very seldom does the Court of Appeals consider the facts. They decide the law alone. The Court: It is an unusual question but you may have it. Q. But you do understand in case the jury brings that verdict in, the law compels an appeal be taken to a higher court? A. Yes. Q. And that then, if that higher court agrees with the verdict of the jury, that there still is a final appeal to the Governor of the State of New York, who has the right to pass upon it before this man is definitely punished? A. Yes."

On the examination of the sixtieth prospective juror the record shows the following: " Q. [by the District Attorney]: You have heard me state some time back earlier in the examination of jurors the safeguard that goes to a person tried for such an offense as this? A. Yes. Q. You understand that? A. Yes. Q. And will keep that in mind in passing upon this evidence? A. Yes."

From the examinations already quoted and the many others to the same general effect, it is apparent that when the jurors were examined other persons called on the panel were present awaiting examination. The statement made to any one of the prospective jurors was in the hearing of many. The District Attorney made very clear his theory of a jury's verdict. What bearing all this could possibly have had except a prejudicial one is not apparent. Something of the kind occurred in *People* v. *Esposito* (*supra*). There this court, in the opinion by Chief Judge HISCOCK, said:

" And then finally in summing up the District Attorney used this significant language: ' I wish also to call your attention here to the fact that this defendant can appeal from this decision of yours to the Court of Appeals but the prosecution cannot.'

" That is, in subtle manner it was suggested to the jury that because of his right to appeal no ultimate harm could come to defendant if they should through error or intention relax somewhat in the application of those principles which ought to govern their deliberations in his favor and that this view was all the more pertinent because of the fact that no error against the People could thus be corrected " (p. 376).

The vice of the statements and questions of the District Attorney lies not primarily in the incorrectness of the statement that an appeal to the Court of Appeals is compulsory but in the suggestion that the jury's verdict, if against the defendant, cannot be seriously harmful to him because of the opportunities for review. This suggestion is fundamentally unsound and vitiates the trial. No element of

our judicial process must be more carefully protected than the function of the jury. The jury has nothing to do with appeals and applications for clemency. They lie in a wholly different field. The jurors have task enough to find the truth and proclaim it by their determination without regard to ultimate consequences. Nothing can be permitted to weaken the jurors' sense of obligation in the performance of their duties. (Cf. *People* v. *Sherwood*, 271 N. Y. 427; *People* v. *Santini*, 221 App. Div. 139; affd., 246 N. Y. 612.)

It is unnecessary in view of the fundamental error already pointed out to consider other serious matters urged upon us as grounds for reversal.

The judgment of conviction should be reversed and a new trial ordered.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and CONWAY, JJ., concur.

Judgment of conviction reversed, etc.