**UNITED STATES v. LICHT.**

No. 71, Docket 20336.

Circuit Court of Appeals, Second Circuit.

Dec. 3, 1946.

Writ of Certiorari Denied March 3, 1947.

See 67 S.Ct. 863.

FRANK, Circuit Judge, dissenting.

James D. C. Murray, of New York City (Abraham J. Gellinoff, of New York City, of counsel), for appellants.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner and Frederick H. Block, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The offenses of which the appellants have been convicted were committed in connection with the bankruptcy of H. J. Licht, Inc., which was adjudicated upon an involuntary petition filed on November 25, 1941. This company was engaged in the business of manufacturing and selling fur coats; Bernard Licht was its president, his brother Herman was secretary-treasurer and their father, Harry Licht, occasionally helped in the business. On liquidation of the bankrupt's estate only about $400 was realized; its debts were about $25,000. The shortage was explained by the appellants as the result of an alleged burglary on November 11, 1941, in which coats and skins of the value of some $26,000 were stolen from a store which Harry Licht had rented for the company at 337 West 17th Street in New York City. The Govern-ment contended that the alleged burglary was a fiction which the appellants had planned and executed as a means of se-creting the "stolen" merchandise in con-templation of bankruptcy. The trial judge charged that unless the jury was convinced beyond a reasonable doubt that "a false burglary was staged" the defendants must be acquitted. The verdict resolved this issue adversely to the appellants and their main contention upon this appeal is that the evidence is not sufficient to support the verdict.

From the very nature of the case the Government had to make its proof by circumstantial evidence. In a charge of the utmost fairness, to which neither side took any exception, the trial judge re-viewed the evidence and the respective contentions of the prosecution and the de-fense as to what it proved. We shall not again review it in detail but shall refer briefly to some of the suspicious circum-stances which tend to support the jury's inference. The accused explained that they had taken the store on West 17th Street, which was outside the fur district, because labor troubles interfered with business at their regular factory and show-room at 307 Seventh Avenue; but the labor union had ceased picketing about one month after the store was rented and five months before the burglary. The store was divided into a front room and a back room and from the latter a door led into a toilet at the end of the hall. It had been the prac-tice of the fur finisher Tassa, who occu-pied the store on the other side of the hall, to enter the back room through the door from the toilet. Shortly before the bur-glary, Tussa was told that he could no longer enter the back room because the door had to be kept locked on account of the accumulation of fur coats in the back room; but Tassa testified that in fact the door had previously been kept locked and was opened to him only when he knocked. The coats were said to be stored in cartons which was contrary to the trade practice of hanging coats from racks to preserve their shape. Expert testimony was introduced tending to prove that the door from the toilet through which the burglars were supposed to have

gained entry could not have been forced open in the manner in which it appeared to have been forced. If this was believed, the jury could have inferred that the burglary was an "inside job." And their suspicions would not have been lessened by the fact that the "burglars" went to the trouble of removing from the cartons 990 coats and 10,000 dyed rabbit skins, leaving the cartons scattered about, instead of taking the cartons and their contents. Moreover, shortly before the burglary the accused collected two of their largest accounts receivable before they were due and arranged to pay certain favored creditors. Herman Licht went to Chicago, collected a bill of $3,160.03 on November 7, 1941 and telephoned his brother in New York to advise holders of the company's outstanding checks to deposit them. On November 10th an additional sum of $1,991.07, the proceeds of another account collected before it was due, was deposited in the company's bank account; and on the same date there were charged against it checks aggregating $4,105, the larger part of which represented payment to Licht relatives. Thus the company was left with practically no liquid assets, although it had notes in large amounts shortly to mature: $7,200 between November 15 and the end of the month, $8,621 in December, and $2,787 in January 1942. In the face of the foregoing and of other evidence, to which we have not referred specifically, we think that this was typically a case for the jury and that its verdict is sustainable.

Error is assigned to the admission of the testimony of George A. Berly, called as an expert witness as to the condition of the door and lock, his first examination of which was not made until October 13, 1943. However, a proper foundation was laid for the admission of his testimony. Detective Grojean identified photographs as portraying the door and lock as he saw them immediately after the burglary and Berly identified the same photographs as showing the door and lock he examined. Whether his testimony was inconsistent, as the appellants contend, and how much weight to give it were matters for the jury.

Finally complaint is made regarding the prosecutor's summation to the jury. He said with reference to Bernard Licht "I think he lied in putting in answers on his questionnaire * * *" When counsel objected that the court had excluded that, the judge said he had done so and instructed the jury to disregard the argument. While the court had excluded as immaterial evidence of falsification in the questionnaire as to Bernard's physical condition, it had permitted cross-examination on the more vital issue as to whether Bernard had there falsely claimed that he was the sole support of his parents—more vital because of the Government's claim that the father, Harry Licht, participated in the business. When the court stopped the prosecutor in his summation, it seems probable that the court had in mind the issue as to the physical condition only; if, however, the court did intend to rule more broadly, it was the court which was then in error because of faulty recollection of the testimony. The court's earlier rulings on evidence were correct, for obviously testimony as to whether Bernard had lied as to his father's status on the questionnaire was both relevant and highly important as to his credibility, as well as in connection with the issue of the father's connection with the business. Again, to meet defense counsel's appeal to the jury not to destroy all the male members of the Licht family by a verdict of guilt, the prosecutor said:

"A lot has gone on since December 1941. It is unfortunate to see a father and two sons on trial. I do not think you will waste any crocodile tears over the fact that in this particular case we have a father and two sons on trial. A lot more tragic and horrible things have happened—"

Thereupon counsel objected that the statement was improper, "dragging the war into this case." The judge made no ruling on the objection but directed the prosecutor to "Go ahead and sum up." The prosecutor's remark was intended to counteract defense counsel's emotional appeal, several times repeated, not to destroy the accuseds' family. As to other objections it is sufficient to say that incidental references to the war, just as to other facts of con-

temporary history, cannot be improper of themselves alone when not intended as inflammatory and having pertinency to the facts as developed in the record.

Judgment affirmed.

FRANK, Circuit Judge (dissenting).

This case was tried in May 1945, while World War II was still in progress. It has often been held that, when a trial occurs during a war, it is highly prejudicial error for a prosecutor to make irrelevant references thereto.[1] I discussed the cases so holding in my dissenting opinion in United States v. Antonelli Fireworks, 2 Cir., 155 F.2d 631, 642, and shall not here repeat in detail what I there said.

The evidence of guilt in the instant case is far weaker than in Antonelli. For here the trial judge, in explaining why he granted bail said: "It was merely a circumstantial case. *I rather thought the jury would acquit.* I think I expressed my idea at the time that *it was not the strongest case in the world and I wouldn't have been surprised had the jury acquitted.*"[2] In Kotteakos v. United States, 66 S.Ct. 1239, 1241, the Supreme Court said that, in determining whether an error is prejudicial, consideration must be given to whether "the evidence * * * is evenly balanced or one-sided," and whether one can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," since the "inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error." The remarks of the trial judge, quoted above, show that here the evidence as to guilt was far from one-sided. In Glasser v. United States, 315 U.S. 60, 67, 62 S.Ct. 457, 463, 86 L.Ed. 680, the Court, speaking of a case "where the scales of justice" are "delicately poised between guilt and innocence," said, "Then error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial since there is a real chance that it may have provided the slight impetus which swung the scales towards guilt." See also Bihn v. United States, 66 S.Ct. 1172; Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402; Bruno v. United States, 308 U.S. 287, 293, 60 S.Ct. 198, 84 L.Ed. 257; Berger v. United States, 295 U.S. 78, 84–89, 55 S.Ct. 629, 79 L.Ed. 1314[3]

In the Antonelli case, the prosecutor mentioned the war only once. Here, five separate times at intervals during his summation, the prosecutor referred to it. Since my colleagues describe but two of those instances, I shall quote all of them:

(1) "I am talking about lies, prewar and postwar varieties, and with the Lichts, there is no change because of the war * * *"

(2) Referring to Bernard Licht, he said, "Although it has nothing to do with this case, I think he lied in putting in his answers on his questionnaire * * *" (i. e., his draft questionnaire).

(3) He referred to the two younger defendants as "the young boys, who in 1941 were 28 and 26 respectively * * *" thus directing attention to the fact that they were within the draft age but were exempted from military service.[4]

[1] See, e.g., Viereck v. United States, 318 U.S. 236, 247–248, 63 S.Ct. 561, 87 L.Ed. 734; Hall v. United States, 4 Cir., 256 F. 748, 752; August v. United States, 8 Cir., 257 F. 388, 393; Elmer v. United States, 8 Cir., 260 F. 646, 649; People v. Esposito, 224 N.Y. 370, 373, 121 N.E. 344; People v. Levan, 295 N.Y. 26, 35, 64 N.E.2d 341.

[2] Emphasis added.

[3] This court was reversed in five of the cases I have just cited, i.e., Kotteakos, Bihn, Bollenbach, Bruno and Berger.

[4] In People v. Esposito, 1918, 224 N.Y. 370, 373, 374, 121 N.E. 344, 345, the district attorney on cross-examination attempted to show that the defendant had claimed exemption because he was a resident alien, "But it failed to elicit the information which the district attorney desired. * * * Nevertheless, in summing up he said: 'Why did he not answer about the draft questions when he was on the stand, when shown papers in regard to the draft?'" The Court of Appeals said, "There was no suggestion that the defendant attempted by unlawful means to secure exemption or that he acted otherwise than in accordance with the privilege conferred by law upon resident aliens to secure exemption from selective service. Nevertheless it very well might be that some jury-

(4) Referring to the "real burglars," he said that "there is about as much chance of them showing up as the Japanese have of winning the war * * *"

(5) "A lot has gone on since December 1941.[5] It is unfortunate to see a father and son on trial. I do not think you will waste any crocodile tears over the fact that in this particular case we have a father and two sons on trial. A lot more tragic and horrible things have happened * * *"

With respect to the fifth item, my colleagues say that this remark was perhaps justified because it was intended to counteract the appeal of defense counsel not to break up the family of the accused by sending all the male members of that family to jail. To that suggested justification there are, I think, two answers: (1) The trial judge himself, when he came to sentence the defendants, thought the appeal, not thus to break up the family, was entirely proper, for, noting the jury's recommendation for leniency as to Harry Licht, he said, "I got the impression during the trial that Harry Licht did what the ordinary father would do, kept his boys in business and helped them along * * * What makes this situation more difficult is that all the members of one family are up for sentence * * * I don't want to destroy a family more than necessary." (2) In any event, in seeking to counteract the appeal of defense counsel not to put all the defendants in jail, the prosecutor, while he might properly have said that, if they were guilty, they deserved to be jailed, was not justified, I think, in referring to the irrelevant fact that the war had broken up families.

The government in its brief urges that defense counsel, in objecting to this remark on the ground that it "dragged in the war," had himself "focussed the jury's attention on the contrast between the lot of the defendants and that of families bereaved by the war." But, as courts have frequent-ly observed, when a prosecutor indulges in improper remarks, he puts a defendant's lawyer in this dilemma: If the lawyer does not object, the remark may be exceedingly prejudicial; if he does object, he may make matters worse.[6] For that reason, it has been held that such an illegitimate reference to a war in progress is not curable by the judge's admonition to disregard it. See, e.g., People v. Levan, 295 N.Y. 26, 64 N.E.2d 341, 346, where the trial judge had given such an instruction, but the Court of Appeals said: "The virus thus implanted in the minds of the jury is not so easily extracted." Cf. Latham v. United States, 5 Cir., 226 F. 420, 425, L.R.A.1916D, 1118; Pharr v. United States, 6 Cir., 48 F.2d 767, 770, 771; Towbin v. United States, 10 Cir., 93 F.2d 861, 868; Volkmor v. United States, 6 Cir., 13 F.2d 594, 595; Skuy v. United States, 8 Cir., 261 F. 316, 319, 320; Robinson v. United States, 8 Cir., 32 F.2d 505, 508, 66 A.L.R. 468; Maytag v. Cummins, 8 Cir., 260 F. 74, 82, 16 A.L.R. 712; Frisby v. United States, 35 App.D.C. 513, 520; Vaughan v. Magee, 3 Cir., 218 F. 630, 631, 632; James Stewart & Co. v. Newby, 4 Cir., 266 F. 287, 295, 296; Beck v. Wings Field, Inc., 3 Cir., 122 F.2d 114, 117; Pierce v. United States, 6 Cir., 86 F.2d 949, 952, 953; People v. Fielding, 158 N.Y. 542, 53 N.E. 497, 46 L.R.A. 641, 70 Am.St.Rep. 495; People v. White, 365 Ill. 499, 6 N.E.2d 1015, 1021; Lickliter v. Commonwealth, 249 Ky. 95, 60 S.W.2d 355, 357; Cassemus v. State, 16 Ala.App. 61, 75 So. 267, 268; cf. Waldron v. Waldron, 156 U.S. 361, 383, 384, 15 S.Ct. 383, 39 L.Ed. 453; Throckmorton v. Holt, 180 U.S. 552, 567, 21 S.Ct. 474, 45 L.Ed. 663; Lockhart v. United States, 9 Cir., 35 F.2d 905, 907; Middleton v. United States, 8 Cir., 49 F.2d 538, 540.

The court instructed the jury to disregard the second item above quoted. He did so on the sole ground that the evidence concerning Bernard Licht's questionnaire had been excluded. Since, however,

---

man would be prejudiced against an alien, who, enjoying the privileges of this country, was still unwilling to serve it. The evidence which it was attempted to elicit was utterly incompetent, and the proceeding of the district attorney could have had for its purpose no other than to appeal to the prejudices of such a juryman."

[5] The date of the Pearl Harbor attack.

[6] Cf. State v. Accardo, 129 La. 666, 56 So. 631, 632.

the judge said nothing as to the impropriety of the implied reference to the war, this instruction could not undo the harm caused by the other references thereto. Even if no single one of them would have been reversible error, I think the cumulative effect of this repetitious "dragging in of the war," with what seems to have been the deliberate purpose of arousing the jury's prejudice,[7] requires a new trial.[8]

My reasons for so thinking are stated at length in my dissenting opinion in the Antonelli case; those reasons I believe have been essentially confirmed by the subsequent Supreme Court decisions in Bihn v. United States, supra, and Kotteakos v. United States, supra.

J. Darrell Douglas and Harry R. Canfield, both of Cleveland, Ohio (John H. Cassidy, of St. Louis, Mo., on the brief), for appellants.

Alfred W. Petchaft, of St. Louis, Mo. (Lawrence C. Kingsland, of St. Louis, Mo., on the brief), for appellees.

---

[7] See note 4 supra.

[8] Since defense counsel in his summation had suggested that there had been suspicious delay, since 1941, in prosecuting the case, I disregard, as responsive to those comments, the following remarks of the prosecutor: "Since 1941, the F. B. I. have been busy with a lot of things besides bankruptcy cases * * * It is merely due to the war period, nothing more or less * * * "