THE PEOPLE OF THE STATE OF NEW YORK, Respondent v. HERBERT L. CANTY, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered February 15, 1967, convicting him of murder in the first degree, upon a jury verdict, and sentencing him to life imprisonment. Judgment reversed, on the law and in the interests of justice, and new trial ordered. The findings of fact below are affirmed. Though in final analysis, the identification of appellant may have rested upon the testimony of one

witness (Mrs. Daring) who required three pretrial instances of observation for a final position of certainty, her surety in the courtroom recognition of appellant, based upon her opportunities, independent of these instances, to observe appellant during the commission of the crime, presented a close jury question under the " totality of circumstances" developed (*People* v. *Lee*, 308 N. Y. 302, 304; *People* v. *Spinello*, 303 N. Y. 193, 203; *People* v. *Lipscomb*, 29 A D 2d 960). Since the jury was free to find that identification was reasonably shown, there was no deprivation of due process (*People* v. *Lipscomb, supra*). On issues other than identification, the evidence adduced also presented a very close question of appellant's guilt and, accordingly, the presently conceded over-zealousness of the prosecution in remarks made in summation may not be overlooked under section 542 of the Code of Criminal Procedure (*People* v. *Mleczko*, 298 N. Y. 153, 162–163). In our opinion, the prosecutor could properly cross-examine appellant, while on the stand as a witness, as to such prior criminal, immoral or vicious acts in his life as had any tendency to show him to be unworthy of belief (*People* v. *Sorge*, 301 N. Y. 198), including adulterous relationships with females of unconventional morality (*People* v. *Webster*, 139 N. Y. 73; *People* v. *Fiori*, 123 App. Div. 174). However, the prosecutor overstepped the boundary line of fair play when, in this very close case, in summation, he went beyond the permissible point, of asking that the jury disbelieve an adulterous defendant, and turned appellant's admitted acts of adultery into the equivalence of guilt of violation of the Ten Commandments, for which moral offenses appellant was not on trial (*People* v. *Fields*, 27 A D 2d 736; *People* v. *Lombardi*, 20 N Y 2d 266, 272). In inflammatory language, the prosecutor in effect, and by undue emphasis, arraigned appellant before the jury as one who had taken God's name in vain by false oath, committed adultery, and coveted his neighbor's wife, and, hence, must have been the person who committed the acts of robbery, larceny and homicide which comprised the instant felony murder. The vice of this presentation was that the prosecutor impermissibly used appellant's adulterous acts as indicating a propensity on appellant's part to commit murder (*People* v. *Childers*, 28 A D 2d 725) and as portraying a person on trial for violation of the higher and moral law (*People* v. *Fields, supra*). It is the duty of the prosecutor to refrain from overzealous advocacy (*People* v. *Lee*, 4 A D 2d 770, 771, affd. 4 N Y 2d 843, cert. den. 358 U. S. 845), even in cases of clearest guilt (*People* v. *Alvarez*, 4 A D 2d 45, 46). Improper statements by a prosecutor in his summation cannot be countenanced (*People* v. *Esposito*, 224 N. Y. 370; *People* v. *Mleczko*, 298 N. Y. 153, *supra*; *People* v. *Fielding*, 158 N. Y. 542) and "when so inflammatory as to create substantial prejudice will require reversal" (*People* v. *Feldt*, 26 A D 2d 743, 744). Where extraneous matter has pointedly intruded into the case by the prosecutor's reference in summation thereto, the error cannot be overlooked under section 542 of the Code of Criminal Procedure (*People* v. *Mleczko, supra*). At bar, where the prosecutor's summation remarks were promptly challenged by the defense, it cannot be said that by way of afterthought appellant merely raised an arguable point which he had waived by silence at the time of occurrence (cf. Code Crim. Pro., § 420-a). Brennan, Rabin and Hopkins, JJ., concur; Beldock, P. J., and Christ, J., dissent and vote to affirm the judgment, with the following memorandum: Defendant was convicted of having shot and killed a physician in his office, in the course of an attempted robbery. We disagree that the prosecutor's comments in his summation were such as to warrant a reversal of the judgment. Defendant, testifying on his own behalf, specifically made it a point to instill in the minds of the jury that he believes in God and leads a circumspect life, without financial pressure. Apparently, this latter element was introduced to negate that he had any

motive for robbery. He further attempted to bolster his image of morality by calling his minister as a witness. He thereby opened the door to the cross-examination, which, in eliciting his adulterous way of life and the attendant financial excesses ·in which he necessarily and admittedly indulged, (a) discredited his specific affirmative assertions of morality, (b) dispelled the image of morality and circumspection that he had attempted to create, (c) established that he was living beyond his means and (d) supplied the possible motive for the attempted robbery which resulted in the murder with which he was charged. In this context, the prosecutor's reference to the Ten Commandments and some of the specific mandates therein contained may hardly ·be realistically considered such an awe-inspiring revelation to an adult jury as to warrant attributing to it the prejudicial significance suggested by the majority. Moreover, we should not readily discount the significance of the trial court's charge that (a) the sole question was identification, (b) defendant was not on trial for immorality, (c) immorality was no proof of guilt but only went to credibility and, pursuant to defendant's request, (d) if the jury were not satisfied with witness Daring's identification testimony, the other evidence in the case was insufficient, all of which, in our opinion, adequately attenuated any possible prejudice claimed to have been engendered by the prosecutor's alleged overzealous comments. The situations in the cases relied on are not analogous or equatable with the one at ·bar. We also disagree that a close question of defendant's guilt was presented. However, even if such were the case, to compel the prosecutor to conform, under the circumstances adduced, to such a rigid standard of conservative comment as the majority suggest, particularly in a situation involving a serious crime such as was perpetrated at bar, is to strain the interests of justice to the point of unreasonably frustrating the effectiveness of our law enforcement agencies in the discharge of their responsibilities to the People. It is in that vein that we note with approval the following comment by Mr. Justice Cardozo in *Snyder* v. *Massachusetts* (291 U. S. 97, 122): " But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."