STATE OF NORTH CAROLINA v. JAMES CALVIN JONES

No. 60

(Filed 5 February 1979)      .

1. **Criminal Law § 102.13— capital case—jury argument—right of judicial review —new trial**

    Defendant is entitled to a new trial on the guilt determination phase of a capital case because of the district attorney's improper argument to the jury that "if you do err in this case he [defendant] has the right of appeal. The State doesn't have that. State has no right of appeal from a case like this."

2. **Criminal Law § 102.13— capital case—jury argument—judicial review—failure to object**

    Where there are intimations in the district attorney's argument in a death case that a jury's verdict is not a final disposition of the case, such remarks are so prejudicial that counsel's failure to make timely objection will not waive defendant's right to further review.

3. **Criminal Law § 177— bifurcated trial—new trial on guilt phase—necessity for new trial on sentencing phase**

    The granting of a new trial on the. guilt determination phase of a bifurcated trial requires a new trial on the sentencing phase of such trial.

4. **Criminal Law § 102.13— capital case—jury argument in sentencing phase—reading of statute providing for review of death case**

    The rule precluding any argument which suggests to jurors that they can depend on judicial or executive review to correct an erroneous verdict and thereby lessen the jurors' responsibility applies with equal force to a sentence recommendation in a bifurcated trial. Therefore, it was improper for the district attorney to read to the jury G.S. 15A-2000(d), relating to the review of a sentence of death by the Supreme Court, during the sentencing phase of a bifurcated trial for the capital crime of first degree murder.

5. **Criminal Law § 102.13— capital case—jury argument in sentencing phase—possibility of parole**

    In this prosecution for the capital crime of first degree murder, it was improper for the district attorney during the sentencing phase of the trial to read the parole statute to the jury and to speculate on the possibility that defendant might later be paroled if he received a life sentence.

APPEAL by defendant from *Lee, J.*, October, 1977, Session of ROBESON Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the capital crime of murder in the first degree. He was declared to be an indigent on 8 July 1977, and Horace Locklear of the Robeson County Bar was appointed by the

court to represent defendant in this cause. On 27 July 1977, defendant's counsel filed a motion praying that additional counsel be appointed to assist in the defense, averring among other things that defendant's best interest would be served by the appointment of additional counsel. This motion was denied by Judge Henry A. McKinnon, Jr., on 21 September 1977. On 6 September 1977, defendant was arraigned and through his court appointed counsel entered a plea of not guilty.

The State offered evidence at the guilt determination phase of the trial which tended to show that on 3 July 1977, defendant was imprisoned in the Robeson County prison unit and on that day he was granted a six hour community release pass. He left the prison unit at about noon with his leave sponsor, Grady Locklear, who carried defendant to the home of Ernest Demery where they picked up defendant's small child. Grady Locklear left defendant and his child at the home of defendant's parents at about 1:00 p.m. Thereafter, defendant borrowed an automobile from his brother and drove to the home of Billy Ray Clark where he borrowed a rifle and eight bullets. He then proceeded to the home of "young Jimmy" Locklear, who had been going with defendant's wife during defendant's imprisonment. Defendant drove by this house several times and on two occasions stopped and sounded the horn of the automobile. No one came out of the house, and defendant then proceeded to Herbert Locklear's home where "old Jimmy" Locklear lived. Herbert had also "dated" defendant's wife while defendant was in prison.

Johnny Dial testified that on 3 July 1977 at about 4:30 p.m., he was riding by the home of Herbert Locklear when he observed an old man and a young man "toussling" in the doorway of the house. The older man's face was covered with blood, and their struggles carried the two men into the yard. The older man ran toward the road, and the younger man shot him in the back causing him to collapse onto the road. The younger man then left in a yellow Oldsmobile. The witness identified defendant James Calvin Jones as the younger man involved in the fight and the shooting.

The State also offered evidence tending to show that defendant in the late afternoon of 3 July 1977 told his brother that he had just killed Herbert Locklear's father. There was medical testimony tending to show that deceased died as a result of two

bullet wounds which entered his back. Defendant offered no evidence at the guilt determination phase of the trial, and the jury returned a verdict of guilty of murder in the first degree.

Pursuant to the provisions of G.S. 15A-2000, the trial judge then conducted a proceeding, before the same jury which returned the verdict of guilty of murder in the first degree, to determine whether defendant should be sentenced to death or life imprisonment. At the sentencing phase of the trial, defendant offered evidence which in substance showed that while defendant was in prison his wife was unfaithful to him and had had affairs with several men including young Jimmy Locklear and Herbert Locklear. His wife had neglected, abused and abandoned the young child born to their marriage.

The State's evidence during the sentence determination phase of the trial tended to show that in 1966, defendant pled guilty to armed robbery and was sentenced to imprisonment for a period of from fifteen to twenty years. He escaped from prison and was convicted of felonious escape on 24 February 1970. He was paroled on 26 May 1972, and his parole was revoked on 8 October 1976.

After answering issues as to aggravating circumstances and mitigating circumstances, the jury unanimously recommended that the punishment to be imposed upon James Calvin Jones be death.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Assistant Attorney General, for the State.*

*Horace Locklear for defendant appellant.*

BRANCH, Justice.

We first consider defendant's contention that he is entitled to a new trial because of the argument of the district attorney.

[1] Defense counsel noted an exception to that portion of the district attorney's argument made at the guilt determination phase of the trial in which the district attorney stated, "Now you know, if you do err in this case he [defendant] has the right of appeal. The State doesn't have that. State has no right of appeal from a case like this."

[2]   Ordinarily it is the duty of defense counsel to immediately object to an improper argument by the district attorney so that the trial judge might attempt to correct such transgression by a curative instruction. *State v. Hawley*, 229 N.C. 167, 48 S.E. 2d 35 (1948). Here there was no objection to this portion of the district attorney's argument. However, it is now well settled that in a death case, as here, where there are intimations in the district attorney's argument that a jury's verdict is not a final disposition of the case such remarks are so prejudicial that counsel's failure to make timely objection will not waive defendant's right to further review. *State v. White*, 286 N.C. 395, 211 S.E. 2d 445 (1975); *State v. Hawley, supra*; *State v. Little*, 228 N.C. 417, 45 S.E. 2d 542 (1947).

In *State v. White, supra*, a case strikingly similar to the case *sub judice*, the defendant was convicted of murder in the first degree and appealed from judgment imposing a sentence of death. In that case, the district attorney in his argument to the jury said, ". . . you will answer the question whether this defendant is guilty of first degree murder. If found guilty, he gets an automatic appeal to the Supreme Court of North Carolina—it is necessary. If any error is made in this court, that Court will say." The trial judge sustained defendant's immediate objection to this argument and instructed the jury not to consider that portion of the district attorney's argument. Further, at the beginning of the charge, he instructed the jury as follows:

> I want to go back to the argument that was objected to in the argument of counsel that the Supreme Court has a right to send this case back on mistakes. The reason I sustained that objection, I want you all to understand is that the Supreme Court will review this case. That they would only send the case back if I made a mistake on a legal question. They will not review the decisions of the facts by the jury. The jury is the sole trier of the facts of this lawsuit.

Despite the trial judge's original admonition and later instruction, this Court found the district attorney's argument to be prejudicial. In so holding, this Court, speaking through Chief Justice Sharp, *inter alia*, stated:

> This Court has consistently held that, in a capital case, *any* argument made by the solicitor, or by private prosecu-

tion appearing for the State, which suggests to the jury that they can depend upon either judicial or executive review to correct any errors in their verdict, and to share their responsibility for it, is an abuse of privilege and prejudicial to the defendant. [Emphasis added.]

The Court considered a similar argument by the district attorney in *State v. Little, supra.* There the district attorney in his closing argument, in substance, said that:

. . . [I]n all first degree cases where men were convicted there would be an appeal to the Supreme Court, and that in this case, if this defendant were convicted there would be an appeal to the Supreme Court, and that in the event the decision of the lower court should be affirmed, there would be an appeal to the Governor to commute the sentence of the prisoner; and that not more than sixty per cent of prisoners convicted of capital offenses were ever executed.

Notwithstanding the fact that defense counsel advised the trial judge that he did not desire an instruction to disregard this argument, this Court found prejudicial error. Justice Winborne (later Chief Justice) writing for the Court stated:

. . . [I]t is manifest that the statements of facts that if the defendant be convicted there would be an appeal to the Supreme Court, and that in the event the decision of the lower court should be affirmed there would be an appeal to the Governor to commute the sentence of the prisoner, and that not more than sixty per cent of prisoners convicted of capital offenses were ever executed, are matters not included in the evidence. Nor are they justified as being in answer to argument of counsel for defendant. They are calculated to unduly prejudice the defendant in the defense of the charge against him. . . .

*Accord: State v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664 (1953); *State v. Hawley, supra.*

We note that the case of *State v. Finch,* 293 N.C. 132, 235 S.E. 2d 819 (1977), is distinguishable from the cases above reviewed and cited. In *Finch,* the trial judge stated: "If the *Court* is wrong, then the Court of Appeals will let that be known. Somebody will straighten that out, but you take your instructions from

the Court." [Emphasis added.] This statement merely let the jury know that they were to take their instructions from the court and that the court's statements as to the law were subject to review. This statement in no way affected the responsibility of the jury or intimated that the jury verdict was not binding.

In the case before us for decision, the district attorney's statement was erroneous in that the Supreme Court does not review the verdict of the finders of fact on the guilt determination phase of a bifurcated trial. However, the overriding vice in this portion of the district attorney's argument is that he effectively told the jurors that they could rely upon the Supreme Court to correct their verdict if it were wrongful or improper thereby causing the jury to believe that the Supreme Court would share with them a burden and responsibility which was in fact their sole responsibility.

[3] For error in the district attorney's argument to the jury, there must be a new trial on the guilt determination phase of the trial. We are of the opinion that the granting of a new trial on the guilt determination phase of a bifurcated trial requires a new trial on the sentencing phase of such trial.

Even so, we think it necessary to consider the district attorney's argument in the sentencing phase of this trial in order to provide guidance in future death cases.

In his argument, the district attorney stated:

Now, listen to me a minute. Let's go to another section of the law right quick, 15A-2000, Subsection d(1) and (2). Subsection d(1) and (2), to show you what I'm talking about. This is extremely important. Please try to get a grasp of what I'm saying.

"The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of North Carolina, pursuant to procedures established by the Rules of Appellate Procedure." In its review, the Supreme Court is going to review your decision in this case. The Supreme Court shall consider the punishment imposed as well as any errors assigned on appeal. Number (2). This is where it gets very important. "The sentence of death shall be overturned and a sentence of life imprisonment imposed

in lieu thereof by the Supreme Court upon a finding that the record does not support the jury's findings of any aggravated circumstances upon which the sentencing court based its sentence of death, or upon a finding that the sentence of death was imposed under the influence of passion, prejudice or other arbitrary factor, or upon — " listen to this, now. Here's where the domino effect comes in — "or upon a finding that the sentence of death is excessive or disproportionate to the penalty imposed in similar cases."

G.S. 84-14 provides that in jury trials, the whole case as well of law as of fact may be argued to the jury. We have interpreted that statute to mean that counsel may, in his argument to the jury, in any case, read or state to the jury a statute or other rule of law *relevant to such case*, including the statutory provision fixing the punishment for the offense charged. *State v. McMorris*, 290 N.C. 286, 225 S.E. 2d 553 (1976); *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974).

[4]   We are of the opinion that in the sentencing phase of a bifurcated trial, a reference to any statutory provision, which would have the effect of minimizing in the jurors' minds their role in recommending the sentence to be imposed, is precluded. The matters which a jury may consider in the sentencing phase of a bifurcated trial are clearly set forth in G.S. 15A-2000(e) and (f). Thus, we are of the opinion that it was error for the district attorney to read G.S. 15A-2000(d), relating to the review of judgment and sentence by the Supreme Court. A reference to appellate review has no relevance with regard to the jury's task of weighing any aggravating and mitigating circumstances for the purpose of recommending a sentence. More importantly however, such reference will, in all likelihood, result in the jury's reliance on the Supreme Court for the ultimate determination of sentence. This Court has held that in a capital case any argument which suggests to the jurors that they can depend upon judicial or executive review to correct any errors in their verdict and to share their responsibility for it is an abuse of privilege and prejudicial to the defendant. *State v. White, supra; State v. Hawley, supra; State v. Little, supra.* Prior to the advent of the bifurcated trial, the sole responsibility of the jury was to determine the issue of guilt. In a bifurcated trial, the jury has the additional responsibility of determining the sentence to be imposed. We hold that the

rule precluding any argument which suggests to the jurors that they can depend on judicial or executive review to correct an erroneous verdict and thereby lessen the jurors' responsibility applies with equal force to a sentence recommendation in a bifurcated trial.

[5] Defendant also excepted to this portion of the district attorney's argument:

> Let me read you something. North Carolina General Statutes 48-58, "Time of Eligibility of Prisoners to have cases considered." Talking about paroles, now.
>
> "All prisoners shall be eligible to have their cases considered for parole when they have served a fourth of their sentence. If their sentence is determinate —" that means a term of years, like twenty years or fifteen years and it's a fourth of their minimum sentence. If a sentence is indeterminate, — that being like fifteen to twenty years — provided that any prisoner serving sentence for life shall be eligible for such consideration when he has served twenty years of his sentence.
>
> Read it again, "Provided that any prisoner serving sentence for life shall be eligible for such consideration when he has served twenty years of his sentence." Then goes on to say that this section shall not be construed to make mandatory release of any prisoner on parole, but simply guarantees to every prisoner review. Can you take a chance, ladies and gentlemen of the jury? I don't know what the parole board would do in the future. I don't know of [sic] they ever would parole him or not, but can you take that sort of chance that twenty years from now he could be walking around on the streets after having done the things that he's done?

This reference to the parole statute was clearly erroneous. Neither the State nor the defendant should be allowed to speculate upon the outcome of possible appeals, paroles, executive commutations or pardons. *State v. McMorris, supra; see also, State v. Conner*, 241 N.C. 468, 85 S.E. 2d 584 (1955). The jury's sentence recommendation should be based solely on their balancing of the aggravating and mitigating factors before them. The

possibility of parole is not such a factor, and it has no place in the jury's recommendation of the sentence to be imposed.

Defendant's fifth assignment of error states that it challenges the court's instruction, but the argument presented in the brief appears to be a general attack upon the death penalty and the provisions of Article 100 of Chapter 15A of the General Statutes. We do not reach the question of the constitutionality of the death penalty or the provisions contained in Article 100 of Chapter 15A of the General Statutes since we do not pass on constitutional questions when a case can be decided on other grounds. *State v. Crabtree*, 286 N.C. 541, 212 S.E. 2d 103 (1975); *State v. Jones*, 242 N.C. 563, 89 S.E. 2d 129 (1955). Neither do we deem it necessary to here consider defendant's arguments concerning jury selection and evidentiary rulings by the trial court since they present no new questions of law and in all probability will not arise in the next trial.

For reasons stated, there must be a new trial on both phases of this bifurcated trial.

New trial.