391 So.2d 406 (1980)
STATE of Louisiana
v.
Benjamin A. BERRY.
No. 66060.
Supreme Court of Louisiana.
September 4, 1980.
On Rehearing November 26, 1980.
Dissenting Opinion December 19, 1980.
*409 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Patrick C. Leitz, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Fred A. Blanche, III, Baton Rouge, for defendant-appellant.
Richard Shapiro, New Orleans, for amicus curiae-Southern Prisoners Defense Committee.
CALOGERO, Justice.[*]
Benjamin A. Berry was charged by grand jury indictment with the crime of first degree murder, in violation of R.S. 14:30. Following the trial, the twelve member jury returned a unanimous verdict of guilty as charged. Thereafter, the second phase of the bifurcated trial was held to determine whether the death penalty should be imposed. The jury unanimously recommended the death sentence. Defendant appeals on the basis of ten assignments of error grouped into three arguments. For the reasons which follow we affirm the conviction and sentence.
The trial revealed the following facts concerning the offense. On January 30, 1978, Benjamin Berry and one David Pennington decided to rob the Metairie Road branch of the Metairie Bank and Trust Company. The pair drove from their apartment in Baton Rouge to the bank in Jefferson Parish. They arrived at approximately 10:00 a. m. Pennington entered the bank alone to look around, more specifically to see if the tellers had much cash. Pennington returned to the truck where the defendant was waiting and advised him of his findings. It is disputed whether or not Pennington told defendant that there was an armed guard inside the bank. Defendant contends that Pennington did not so inform him, but Officer Lamia testified that defendant had made a statement and told him that he did know there was an armed guard in the bank before he entered. In any event Berry decided to proceed with the robbery. While Pennington waited in the truck, Berry entered the bank, with seven to ten customers inside, with his fifteen round, nine millimeter, "automatic" pistol drawn. The guard, a Jefferson Parish Sheriff's Deputy working a paid security detail, exchanged fire with defendant and was fatally wounded. Berry fired three shots, two hit the officer and one hit the wall about three feet above the floor. The officer fired one shot wounding Berry. Defendant immediately fled from the bank after the shooting and the pair returned to Baton Rouge. Berry was later arrested after entering a Baton Rouge hospital for treatment. Berry was charged with first degree murder. At the trial, Berry argued that he did not have the requisite intent to kill the victim but rather that he shot impulsively in self defense, after being fired upon. The state countered this argument by introducing testimony to the effect that Berry shot first and also fired the fatal shot at close range after the victim had dropped his gun upon first being hit.[1]

*410 ASSIGNMENTS OF ERROR NOS. 1 AND 5
By these assignments defendant contends that the trial court erred in failing to quash the indictment. He claims that the indictment fails to charge an offense punishable under a valid statute. In brief he does not explain the thrust of these assignments. He does not attack the constitutionality of the first degree murder statute. Rather, the entirety of his argument in brief under these assignments is that the jury challenges allowed the state under C.Cr.P. art. 798 fail to meet the constitutional requirements set out in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We will therefore consider that argument.
C.Cr.P. art. 798 provides:
"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
(1) The juror is biased against the enforcement of the statute charged to have been violated, or is of the fixed opinion that the statute is invalid or unconstitutional;
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; or
(3) The juror would not convict upon circumstantial evidence."
Defendant urges that § 2 of the above article denies the accused a fair trial by allowing the state to select a jury composed of members who are unlikely to recommend mercy. Defendant argues that it is unconstitutional to allow the state to exclude jurors who oppose the death penalty without a showing that such opposition would interfere with their ability to determine guilt or innocence. Defendant believes that the statute's emphasis on the ability of the juror to impose the death penalty improperly subordinates the determination of impartiality as to the issue of innocence or guilt in bifurcated trials.[2]
Defendant's challenge to the Witherspoon based jury selection in bifurcated trials has recently been considered by this Court in State v. Williams, 392 So.2d 619, (La.1980). In Williams, this Court rejected the contention that the bifurcated trial affects the validity of the Witherspoon rationale. Since a rehearing has been granted in Williams, we shall readdress the issue here.
In Witherspoon defendant challenged the exclusion of jurors who indicated that they had reservations about sentencing a man to death. The petitioner therein maintained that such a jury, unlike one fully chosen at random from a cross-section of the community, must necessarily be biased in favor of conviction, for the kind of juror who would be unperturbed by the prospect of sending a man to death is the kind of juror who would too readily ignore the presumption of a defendant's innocence, accept the prosecution's version of the facts, and return a verdict of guilty. To support this view, petitioner Witherspoon cited several studies which he felt demonstrated the partiality of death-qualified jurors toward the prosecution on the issue of guilt or innocence. The Supreme Court rejected petitioner's argument, stating as follows:
"The data adduced by the petitioner, however, are too tentative and fragmentary *411 to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was." 88 S.Ct. at 1774-1775.
In the instant case, defendant contends that Witherspoon is not dispositive of his claims since the Court there was not presented with a bifurcated trial proceeding. However, this distinction makes little if any difference in result. In Witherspoon, the same jury which decided the question of defendant's guilt also was called upon to recommend sentence. The only significant change under the present bifurcated scheme is the consideration by the jury of additional evidence at the sentencing portion of the trial relating to certain aggravating and mitigating circumstances which would not be admissible in the guilt phase. The question herein as to the representativeness of the jury at trial on the issue of guilt appears to be precisely the same as that raised by the petitioner in Witherspoon. Thus we find defendant's argument to be without merit.

ASSIGNMENTS OF ERROR NOS. 2, 3, AND 4
These assignments of error were neither briefed nor argued before this Court. While assignments of error neither briefed nor argued are generally considered abandoned, State v. Sonnier, 379 So.2d 1336 (La. 1979); State v. Wientjes, 341 So.2d 390 (La.1976); and State v. Phillips, 337 So.2d 1157 (La.1976), we will review the merits of these assignments of error, because of the capital nature of the case. State v. Jones, 332 So.2d 466 (La.1976).
Defendant contends that the trial court erred by refusing to appoint a sanity commission and to grant a sanity hearing. The trial court is granted considerable discretion in determining if defendant should be afforded a mental examination to determine defendant's mental capacity to proceed. C.Cr.P. art. 643; and State v. Clark, 367 So.2d 311 (La.1979). Here the trial judge called a recess, had defendant examined by a psychiatrist, and allowed testimony from the doctor which was to the effect that there was no evidence of any mental disorder. There is no indication that the trial judge abused his discretion here.
Defendant also contends that the trial court erred in denying his motion for a sequestered jury venire and individual voir dire. C.Cr.P. art. 784 grants the trial court discretion in determining whether jurors should be called singly or in groups. Defendant does not allege in any assignment of error that any prejudicial conduct occurred because of the unsequestered voir dire. The record does not show how the denial of the motion actually caused prejudice to defendant and no prejudice has been alleged in argument. Therefore, we can not say that the denial of the motion was error.
Finally, defendant contends that the trial court erred in denying his motion for a mistrial because blacks were systematically excluded. Without such a showing of systematic exclusion of blacks, the state is entitled to exercise its peremptory challenges as it chooses. State v. Albert, 381 So.2d 424 (La.1980), No. 65,765; and State v. Allen, 380 So.2d 28 (La.1980).
Therefore, we find that none of these assignments of error present reversible error.

ASSIGNMENT OF ERROR NO. 6
By this assignment of error defendant contends that the trial court erred in failing to instruct the jury that, as a matter of law, the victim was not a peace officer engaged in his lawful duties at the time of the shooting. Defendant requested a special *412 jury charge on this issue and the request was denied. This assignment relates to both the guilt phase of the trial and the sentencing phase.
The first degree murder statute in effect at the time of the offense provided as follows:
"First degree murder is the killing of a human being: when the offender has a specific intent to kill or inflict great bodily harm."
However, the instant offense occurred during the effective period of State v. Payton, 361 So.2d 866 (La.1978), wherein this Court recognized that the presence of aggravating circumstances is an essential element of the crime of first degree murder under Louisiana's 1977 statutory scheme. Thus, the trial court correctly charged the jury that a conviction for first degree murder required a finding of one of four aggravating circumstances: (1) the murder was committed in the course of aggravated rape, aggravated kidnapping, aggravated burglary, armed robbery, or attempts to commit these crimes; (2) the murder of a fireman or peace officer engaged in his lawful duties; (3) murder by which the offender knowingly created risk of death or great bodily harm to more than one person; or (4) murder committed for remuneration. Therefore, the question of whether the victim was a peace officer engaged in the performance of his lawful duties was an issue in both phases of the bifurcated trial.
The victim was a Jefferson Parish Sheriff's Deputy wearing his regular Deputy Sheriff's uniform and on guard duty, a security detail, at the bank during normal banking hours at the time of the offense. He, just as other deputy sheriffs often do, had volunteered for this detail, drawing extra pay from the bank. It might be said that he was "moonlighting." He was killed by defendant because he was an armed deputy whose presence was a threat to defendant's bank robbery mission, and his death came during an effort to prevent defendant's successful commission of a serious felony.
Whatever the nature of the deputy's general activities at the bank in the context of the question whether he was engaged in his lawful duties-it was surely within the scope of his lawful duties as a deputy sheriff for him to try to prevent an armed robbery in his presence.[3]
Therefore, we conclude that the the trial judge did not err in refusing defendant's request to charge the jury that the victim was not a peace officer engaged in his lawful duties.
The amicus brief raises an interesting argument in connection with this issue. Therein it is argued that R.S. 14:140(3), a statute defining public contract fraud, indicates that a police officer on private detail does not come within the definition of "a peace officer engaged in his lawful duties" under C.Cr.P. art. 905.4(b).
R.S. 14:140(3) defines public contract fraud as follows:
"When any sheriff or deputy sheriff charged with the duties of enforcing the laws of this state or any political subdivision thereof shall enter into a contract, either written or oral, individually or as a member or stockholder or any partnership, company or corporation with any such person whereby such sheriff or deputy sheriff or partnership, company or corporation of which he is a member or stockholder is to perform any services of a law enforcement nature."
It is argued that since R.S. 14:140(3) makes it illegal for a deputy sheriff to enter into a contract to perform services of a law enforcement nature that Deputy Cochran necessarily was not "engaged in his lawful duties." We disagree with this analysis.
R.S. 14:140(3) was enacted to prevent a sheriff or deputy sheriff from forcing a person to pay money for the services *413 that the officers were already required to perform by their employment as law enforcement officers. In other words, a deputy sheriff could not require a bank to pay him for answering a robbery call, a duty he is already required to perform by his very employment as a deputy sheriff. In the case at bar, Deputy Cochran was being paid to station himself at the bank as a security guard during his normal off duty time, in the bank, a duty or job which he was not already required to perform. There is nothing unlawful about the arrangement Deputy Cochran had with the bank. The bank contacted the Sheriff's Department about obtaining someone for the position, the Sheriff's Department assigned the officer to the job, and the whole arrangement was quite legal.
The deputy's presence and general activity at the bank-on a paid detail-is not the type of proscribed "services of a law enforcement nature" contemplated by R.S. 14:140(3).
The amicus argument is without merit.

ASSIGNMENT OF ERROR NO. 7
By this assignment of error defendant alleges that the trial court erred in allowing the state to argue to the jury twice during the sentencing phase of the bifurcated trial and the defense only once.
C.Cr.P. art. 905.2, regarding the sentencing phase of the bifurcated trial, provides in pertinent part:
"Insofar as applicable, the procedure shall be the same as that provided for trial in the Code of Criminal Procedure."
The applicable code article, C.Cr.P. art. 765(6), provides that the normal order of trial shall allow closing arguments by the state, the defense and the state in rebuttal.
At the sentencing hearing the state made its closing argument, the defense made its argument and then the state made a rebuttal argument, following the statutorily prescribed procedure as set out above.
In the amicus brief it is argued that the Georgia capital sentencing scheme, upon which the Louisiana statute is modeled, supports defendant's argument. In Georgia, the defendant's closing argument is the last presentation to the jury before it commences deliberations on whether to impose the death penalty. In Georgia, this order of closing argument at the sentencing hearing is statutorily prescribed. Ga.Code Ann. § 27-2503. In Louisiana, as stated above, it is statutorily provided that the state have the final argument. While it may be that a different system is to be preferred, the present system is not constitutionally deficient and any change addresses itself to the legislature.
This assignment of error is, therefore, without merit.

ASSIGNMENTS OF ERROR NOS. 8 AND 9
Defendant contends that the trial judge erred when he denied the defense motion for a mistrial (Assignment of Error No. 8) and motion for a new trial (Assignment of Error No. 9), each founded on the contention that the state's closing argument in chief, during the sentencing phase of the bifurcated trial, was so inflammatory and misleading as to deny the defendant a fair hearing from the jury.
The portion of the argument which preceded a defense objection was as follows:
"Ladies and gentlemen of the jury, you have heard all of the evidence, you heard all of the aggravating circumstances. All Mr. Blanche has asked so far is to have compassion ... to have compassion on Benjamin Berry.
"I ask you what compassion did Benjamin Berry have on the wife and children of Robert Cochran? What compassion does a man have who arms himself with a 15 round gun in order to protect himself from one motorcycle club, one motorcycle gang against another? What compassion does this kind of man have? Yet he stands here asking for your compassion. Give me a break. I'm a murderer, but give me a break.
"Certainly, ladies and gentlemen, he's a murderer. A man lies dead in his grave because Benjamin Berry decided he, he was going to be God Almighty."
*414 The trial judge overruled defendant's objection (that the argument was inflammatory) with the observation that "This is closing argument."
The prosecutor thereafter continued:
"It's a burden. It's a burden for you people to be here representing people of the State of Louisiana, but it's time, ladies and gentlemen-It's time to put to death the people who run our streets, make them unsafe for us to live in, make this a jungle.
"Put him to death. We must be able to go into our houses again at night. Let's be able to go to the bank at 10:00 in the morning and do our banking business. Let's take fear, let's erase fear from the people in this country, and the people in the State of Louisiana.
"We don't have one aggravating circumstance in this. We got (sic) four. He was perpetrating an armed robbery. He was going to kill anybody that got in his way. He killed a policeman with a family in the line of his duty. He put other people, ordinary people, not policemen but ordinary people, people just like you, in danger of death. He executed the man in a cruel and heinous way. And, he stands here asking for your compassion.
"The time for compassion is over. We can go about this world giving everybody compassion but, yet, we have to live in a jungle to survive.
"Do you want to have to walk out your house every day of your life and carry a gun to protect yourself against the Benjamin Berrys of the world?
"The time for softness and the time for compassion is over. It is time for action. And the only action we can bring forth is the death penalty. It's provided for in our law and it's provided for in our law as a detriment against crime. Let the Benjamin Berrys walk through this world knowing they can't do what Benjamin Berry did.
"It's time, ladies and gentlemen. It's time. The free ride for criminals is over. It's gone. It's time for you, citizens of the State of Louisiana, of the United States of America, to step forward, to say there's a time for justice. It's a time we must be firm. We don't want to live in a country with insurrection.
"Ladies and gentlemen, it's not an easy decision but it is one I have to ask you. Each and every one of you on voir dire, which Mr. Blanche said was the time to tell the truth, were asked, `Could you, if the circumstances were prevented-presented-to you, could you come back with a death penalty?'
"I can't conceive of no (sic) greater case in this world than this one right here where the facts warrant the death penalty. We have a man who was previously convicted, admitted that from the stand, has been thrown out of the armed services, who's a member of a motorcycle gang. What has he done for society except cause turmoil, except to make this a dangerous place for you to live, for your children to live.
"It's time, ladies and gentlemen. It's time. It's time for the people of this world ___ the good people, to stand up and be counted.
"I would ask you to come back with the death verdict."
No objection was made to the foregoing portion of the argument. However, after defense argument, state rebuttal argument, the jury instruction and retiring of the jury for deliberation, defense counsel moved for a mistrial contending that the state's argument during the sentencing phase was so inflammatory as to deny defendant a fair trial from the jury.
The trial judge denied the motion.
The portion of the argument to which specific objection was made, reference to defendant's previous conviction, dishonorable military discharge and membership in a motorcycle club, was not improper. All had been introduced into evidence at trial and related to defendant's background, a relevant consideration in the context of defendant's argument for compassion.
Defendant's motion for a mistrial came after the jury had been retired, so that the *415 trial judge had no opportunity to admonish the jury and/or counsel the prosecutor on further impermissible argument. Ordinarily we might find the issue not preserved. But because this is a capital case and particularly because this Court has an obligation to examine the record for passion, prejudice or arbitrary factors which may have contributed to the jury's recommendation in favor of the death penalty (See Rule 28 and State v. Sonnier, 379 So.2d 1336 (La.1980), on rehearing at 1368) we feel compelled to scrutinize the prosecutor's argument for possible reversible error.
C.Cr.P. art. 774 provides that arguments shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case, and further that the argument shall not appeal to prejudice. C.Cr.P. art. 905.2 provides that the procedure in the sentencing phase of the bifurcated trial shall be the same as that provided for the guilt phase in the Code of Criminal Procedure, making C.Cr.P. art. 774 applicable to the sentencing hearing.
The closest the state's argument came to impermissibility was where the district attorney suggested to the jury that they, as well as other citizens, were exposed to threats upon their safety by people like the defendant Benjamin Berry. While it could be argued that these statements were conclusions to be drawn from the evidence (i. e. the likelihood that Berry would again commit a crime since he is a repeat offender) it is more likely that this was an attempt by the state to appeal to the jurors' prejudices and fears.
This Court has in several cases opined that arguments which appeal to emotions and fears of jury members are improper: State v. Hayes, 364 So.2d 923 (La.1978) where the state attempted to turn jury deliberations into a plebiscite on crime and criminals and predicted dire consequences to society as a whole if leniency were to be shown; State v. Lee, 340 So.2d 180 (La. 1976) where the prosecutor urged the jury to consider the danger to their families if defendant was acquitted; and State v. Williams, 346 So.2d 181 (La.1977) where the district attorney pointed to several of the jurors and argued that the crime could have been committed on any one of them.
In none of the three cited cases however, did we reverse based upon the improper argument, which appealed to prejudice. While it was held that the argument was improper and such arguments were by no means to be encouraged, it was also held that the arguments were not so prejudicial as to warrant a reversal.[4] In State v. Lee, supra, this Court held that "before a verdict approved by the judge is set aside on the ground of improper argument, this Court must be thoroughly convinced that the jury was influenced by the remarks, and that they contributed to the verdict." See also C.Cr.P. art. 921.
In the present case, the jury returned its verdict based upon the finding of three aggravating circumstances: (1) that Berry had killed a peace officer who was engaged in his lawful duties at the time he was shot; (2) that the murder was committed during an attempt to commit an armed robbery; and (3) that the defendant created a risk of death or great bodily injury to several other persons who were either in the bank as customers or working there as tellers. All three findings are adequately supported by the evidence (as discussed elsewhere in this opinion). In the overall context of this case, considering all the evidence, including defendant's admission that it was his idea to commit the armed robbery, that a deputy sheriff was intentionally killed during the armed robbery, that several other people's lives were endangered, the minimal mitigating factors and the full arguments of both the state and the defense, we are simply not convinced that the jury was influenced by the remarks. In fact in our view, more likely than not, the argument did not influence the jury in its determination to recommend the death penalty. Accordingly, we do not agree with *416 the defendant that a substantial violation of his rights has occurred warranting a reversal of his sentence. C.Cr.P. art. 921.
In defendant's supplemental brief in connection with this argument, that the state's closing argument was inflammatory and impermissible, there is presented the further contention that the state's rebuttal argument in the sentencing phase of trial was not confined to answering the argument of defendant as required by C.Cr.P. art. 774 but rather was a comprehensive review of the facts proving aggravation. The argument is without reversible merit for two reasons. Defendant did not object. And the rebuttal argument, admittedly more comprehensive than the state's opening argument, fairly directed itself toward rebutting the defense argument. Defendant had argued that mitigating circumstances were sufficient to offset such aggravating circumstances as were in fact proven; the prosecution took issue with that and harped on the full extent to which those circumstances were aggravated, and in fact proven.
These assignments of error are, therefore, without merit.

ASSIGNMENT OF ERROR NO. 10
By this assignment of error defendant argues that he should have been granted a new trial because of tactical errors by defense counsel which deprived defendant of a fair trial. Counsel argues that he failed to present a coherent picture of the offense to the jury. Such allegations are not supported by the record.
Defense counsel cross-examined state's witnesses in detail regarding the offense and emphasized inconsistency or uncertainty on the part of the witnesses. Due to the great weight of the evidence against defendant, counsel properly pursued issues which would mitigate and reduce the verdict. The trial court found no merit in this argument due to counsel's competent performance at trial and we find no indication that the trial court abused its discretion in this ruling.
This assignment of error is without merit.

SENTENCE REVIEW
Under C.Cr.P. art. 905.9 this Court is required to review every sentence of death for excessiveness. That article mandates that this Court "establish such procedures as are necessary to satisfy constitutional criteria for review."
"Every sentence of death shall be reviewed by this Court to determine if it is excessive. In determining whether the sentence is excessive the Court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
These sentence review guidelines are the same as those authorized by the Georgia statute and approved by the United States Supreme Court in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d (1976).
We have reviewed the entire record and have not found any indication that the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors. Both the defendant and the victim were white, members of defendant's race were represented on the jury, and race was not an issue at the trial. While the state's remarks in closing argument bordered on impropriety, as discussed herein, we do not find that they were of such a nature as to arouse the jurors' passion and inject an arbitrary factor into the sentencing determination.
The jury found three aggravating circumstances:
(a) that the murder was committed during the attempted perpetration of an armed robbery;
(b) that the victim was a peace officer engaged in his lawful duties; and
*417 (c) that the offender knowingly created a risk of death or great bodily harm to more than one person.
The evidence clearly supports all three findings. Defendant admitted at trial that he entered the bank with his gun drawn intending to rob the bank. There was uncontested evidence that the victim was a uniformed Jefferson Parish Sheriff's Deputy attempting to prevent a felony at the time he was shot (See Assignment of Error No. 6 above). And finally, there is testimony that there were seven to ten customers in the bank when the defendant entered the bank with his fifteen round "automatic" pistol drawn. Several of the customers, who had to duck, were in close proximity to the deputy when defendant fired three shots at him. The defendant himself testified, although perhaps not fully accurately, that with the weapon he was using it was difficult to control how many shots fired. The evidence clearly supports the finding of all three of the aggravating factors found by the jury.
In compliance with Supreme Court Rule 28 § 3, a post sentence investigation report was completed and included in the record. Defendant was twenty-two years old at the time of the offense. Defendant did well in school but eventually dropped out of school in the tenth grade. He entered the military at age seventeen. He reportedly first met his accomplice in the instant offense, David Pennington, while in the service. Defendant had disciplinary problems in the service and was placed in a drug abuse treatment program prior to receiving an undesirable discharge in 1973. Following his discharge, defendant apparently remained in Louisiana working numerous jobs primarily as a laborer.
Defendant's criminal history consists of four prior arrests for nonviolent offenses, with a conviction for simple burglary. At the time of the instant offense defendant was on probation for his 1976 simple burglary conviction. Defendant has a history of drug abuse. Although defendant saw a psychiatrist while in the service, a psychiatric evaluation conducted for the uniform capital sentence report found defendant in good mental condition.
The information contained in the sentence investigation report, along with other factors, is to be considered in this Court's determination of whether the death sentence in this case "is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Four cases of first degree murder charges in Jefferson Parish were provided for comparison with the present case.[5] None of these four cases resulted in the death penalty. However, none was as serious as the present case. While State v. Marse, 365 So.2d 1319 (La.1978) involved the shooting of a police officer, it was under circumstances warranting only a manslaughter conviction which the jury returned. In State v. Love, Jefferson No. 78-774, and State v. Riggins, Jefferson No. 77-1324, which resulted in first degree murder convictions and only life sentences, it appears that the defendants killed their victims during armed robberies. However, none of the other cases involved the killing of a police officer during an armed robbery while creating a risk of death or serious injury to several people. This case is distinguishable from the four cases provided for comparison as it is more serious in the aggravating circumstances involved. There are no mitigating factors here and the defendant *418 himself testified that the armed robbery was his idea, not that of his accomplice. In view of the above, we do not find that the sentence imposed herein "is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

Decree
For the reasons outlined above, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
DENNIS, J., dissents with reasons.
BLANCHE, J., recused.

ON APPLICATION FOR REHEARING
PER CURIAM.
On application for rehearing we considered defendant's argument that the prosecutor's reference in closing argument to the fact that the capital sentencing statute requires the Supreme Court to review every death sentence constituted prosecutorial misconduct and reversible error.
Any prosecutor who refers to appellate review of the death sentence treads dangerously in the area of reversible error. If the reference conveys the message that the jurors' awesome responsibility is lessened by the fact that their decision is not the final one, or if the reference contains inaccurate or misleading information, then the defendant has not had a fair trial in the sentencing phase, and the penalty should be vacated.
But virtually every person of age eligible for jury service knows that death penalties are reviewed on appeal. There is no absolute prohibition against references to this fact of common knowledge, and this court should not impose an absolute prohibition, since such a reference does not necessarily serve to induce a juror to disregard his responsibility.[1] The issue should be determined in each individual case by viewing such a reference to appellate review in the context in which the remark was made.
In the present case the prosecutor, in rebuttal during closing argument, reviewed in detail the capital sentencing statute. He discussed each aggravating circumstance listed in C.Cr.P. art. 905.4, pointing out the applicability or inapplicability in the present case, and then reviewed each mitigating circumstance listed in C.Cr.P. art. 905.5, pointing out that none had even been argued by the defense. Finally, conceding that this is not a "measuring contest", he stated that the presence of aggravating circumstances and absence of mitigating circumstances did not compel imposition of the death penalty, but that the enumerated circumstances were simply considerations listed by the Legislature to guide jurors in determining their recommendation.
Continuing his commentary on the fairness of the legislative scheme, the prosecutor stressed that the statute provided every possible safeguard against arbitrary imposition of death sentences, pointing out that the district attorney, the trial judge, the jury, and the Supreme Court must all agree that the death penalty is appropriate in the particular case.
Thus, the import of the closing argument was to tell the jury (1) that the statutory scheme, recognizing the seriousness of the consequences, provided adequate safeguards against arbitrary imposition of the death sentence, and (2) that weighing of all the considerations enumerated in the statute warranted imposition in this case. The argument did not serve to lessen the significance of the jury's role in the overall scheme.
*419 BLANCHE, J., recused.
CALOGERO, J., would grant rehearing and assigns reasons.
FEDEROFF, J. Ad Hoc, would grant rehearing.
DENNIS, J., would grant rehearing for reasons assigned by him in his dissenting opinion and for reasons assigned by CALOGERO, J.
CALOGERO, Justice, dissenting to denial of rehearing.
I dissent from the majority's action refusing to grant a rehearing in this case.
The amicus rehearing application raises an issue not previously treated, that is, whether it was reversible error for the district attorney, in closing argument of the sentencing phase of the bifurcated trial, to tell the jury that the Louisiana Supreme Court will review, for excessiveness, a death penalty the jury should deem appropriate to impose. Although this issue was raised in the amicus brief on original hearing, it was not assigned as error or argued in defendant's brief, and was, therefore, not addressed originally. For the reasons which follow, I believe the issue raised is sufficiently important to warrant granting the rehearing to enable defendant to brief and argue the issue before the Court.
By virtue of the directive contained in C.Cr.P. art. 905.9,[1] as amended in 1976, this Court adopted Supreme Court Rule 28, § 1 which establishes the following review guidelines in cases where the death penalty is imposed:
"Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Under these review guidelines, this Court is charged with the responsibility of reviewing the jury's recommendation to determine whether the sentence was influenced by any arbitrary factor. It is argued that the prosecutor's comments to the jury concerning appellate review of the case introduced an inappropriate and irrelevant consideration for a jury charged with determining the appropriate sentence to be imposed based on the facts of the case, and therefore, was an arbitrary factor which improperly influenced the jury verdict.
The following comment was made by the prosecutor, on rebuttal, in closing argument of the sentencing phase of defendant's trial:
"There is another provision of the act which says that the Supreme Court of Louisiana shall review every sentencing of death to determine if it is excessive. Every possible safeguard where a defendant for whom the jury is decided, who the D.A. has decided, who the Judge has decided, who shall be sentenced to death shall go to the ultimate court of this state, and they will also determine, is that sentence excessive, was the jury vulnerous [sic] when they reached their verdict."
Although these remarks were immediately followed by the trial judge's charge to the jury on the law, the judge made no statement to the jury that the remarks should be disregarded, nor did he instruct the jury as to the precise law under which the Supreme Court reviews death sentences. The question for our determination is whether these comments by the prosecutor introduced an arbitrary factor into the jury's considerations which may have influenced the sentence imposed.
This question, the effect of informing the jury of appellate review of their verdict, *420 has only been addressed by this Court on one prior occasion, in State v. Myles, 389 So.2d 12 (La.1980). In Myles, the following comments were made by the prosecutor in his opening statement:
"Now, regardless of any verdict that you bring in, and if your verdict is subject to review, both as to guilt and as to sentence, by the Louisiana Supreme Court, this is only true in capital cases. It's the only case that the Louisiana Supreme Court can review the sentence as to whether it's correct or not. Of course, your verdict will also be subject to review in the United States Supreme Court. Therefore, although there's a heavy burden on you in a death sentence case, the burden is no heavier on you than it is on the prosecutor of the State of Louisiana or any of the other courts that have to review your verdict."
The majority, in an attempt to distinguish this case from similar cases in other jurisdictions which hold that such remarks are so prejudicial as to require reversal, held that the remarks here were not intended to encourage the jury to shirk its responsibility. The Court found that the statements were essentially correct, that the prosecutor did not indicate that the jury's determination was any less important because it would be reviewed, and the comments were merely "to express the shared responsibility of the components of the judicial system." Since Myles was reversed on rehearing the issue is unresolved jurisprudentially and a full examination of this important issue is in order.
The overwhelming consensus of cases from other jurisdictions is to the effect that "[c]omments by the prosecuting attorney in his argument to the jury on the power of the court to suspend sentence or to set the jury's verdict aside, or statements that a higher court has the power to review the finding of the jury on the weight of evidence, are calculated to induce the jury to disregard their responsibility, and are improper." 75 Am.Jur.2d § 230, p. 309. A contrary case, People v. Ward, 50 Cal.2d 702, 328 P.2d 777 (1958), held that although such remarks may have been improper, they did not prejudice the defendant in that case.
In People v. Ward, supra, the prosecutor, in attempting to introduce some photographs into evidence stated, "not only is it material from the standpoint of identifying the body, of course, although we have the stipulation here, we have the appellate courts to go through whenever we have an." At that point the prosecutor was interrupted by defense objection which was sustained. The court held that, under the facts of the particular case, defendant was not prejudiced by the remarks although they may have been improper. It should be noted, however, that this was a 1958 decision and prior to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Of the other cases reviewed, all death cases and all post Furman except one, it was consistently held that comments about appellate review of the verdict constituted reversible error. In some cases the objectionable comments came during the sentencing phase of the bifurcated trial, Fleming v. State, 240 Ga. 142, 240 S.E.2d 37 (1977); Hawes v. State, 240 Ga. 327, 240 S.E.2d 833 (1977); State v. Jones, 296 N.C. 495, 251 S.E.2d 425 (1979), in some cases they came during the regular trial in closing arguments, State v. Gilbert, 258 S.E.2d 890 (S.C.1979), and in at least one case the comments came while the prosecutor was questioning prospective jurors, People v. Johnson, 284 N.Y. 182, 30 N.E.2d 465 (1940). One case concerned statements made by the prosecutor to the judge but they were made in the presence of the jury. Prevatte v. State, 214 S.E.2d 365 (1975). In all the above cases, the courts held that either informing the jury directly that their verdicts would be reviewed by an appellate court or making comment to that effect to the judge, in the jury's presence, was prejudicial and required reversal of the conviction and/or sentence.
In all the cases, the reason given for reversal was essentially the same, a general fear that such information has the effect of decreasing the responsibility the jury takes *421 for its verdict.[2] In Prevatte v. State, supra, the case cited most often as authority on this issue, the court held, "[A] reference by the prosecutor to the defendant's right to appeal is more likely to be considered reversible error if a death penalty is subsequently imposed, no doubt for the reason that in the weighing of imponderables it cannot be concluded that the jury were not influenced by such statements to impose more severe punishment than their unbiased judgment would have given." (Emphasis added.) In these cases, the courts have not looked to the intent of the prosecutor in making the statements, nor have they looked at the context in which they were made. Rather, they have simply held that because such statements tend to have the effect of diminishing the jury's sense of responsibility for their verdict, and because it is so difficult to know what influenced the jury in returning the verdict they return, when the death sentence is returned after such statements, reversal is required.
In State v. Jones, 296 N.C. 495, 251 S.E.2d 425 (1979), the court held that references to parole statutes, appeals, executive commutation or any other matters which are subsequent to the trial have no relevance with regard to the jury's task of weighing any aggravating and mitigating circumstances for the purpose of recommending a sentence, and introduce an arbitrary factor into the jury's considerations. While we have not imposed such an absolute prohibition,[3] I nevertheless believe this issue is sufficiently important to warrant granting the rehearing and giving defendant an opportunity to argue this issue before the Court before his death penalty is finally affirmed. For the foregoing reasons, I dissent from the per curiam denial of rehearing.
NOTES
[*] The Honorable Gerald P. Fedoroff participated in this decision as an Associate Justice Ad Hoc in place of Associate Justice Fred A. Blanche, Jr., who was recused.
[1] The jury apparently believed the state's version of the facts, finding that Berry did intentionally shoot the deputy sheriff, since they returned a guilty verdict and since "intent to kill or commit great bodily harm" is an element of the crime of first degree murder. From our own review of the record, we feel that the evidence supports this finding by the jury.
[2] C.Cr.P. art. 800 provides that the defendant has no cause for complaining that the state was erroneously allowed a challenge for cause (a Witherspoon challenge) unless the state has used all of its peremptory challenges, such that the effect of the erroneous ruling is to allow the state more peremptory challenges than it is entitled to by law. Although the trial court only counted seven peremptory challenges by the state, which would render defendant's argument here moot, we have noted twelve such challenges in the record and therefore find that defendant would have cause for complaint if the state had been erroneously allowed a challenge for cause.
[3] Under a similar fact situation, where a deputy sheriff was on duty as an apartment security guard, this Court held that a parish sheriff's deputy on such duty is considered as an on duty member of the law enforcement agency for the purposes of protecting a defendant's Fourth Amendment rights. State v. Wilkerson, 367 So.2d 319 (La.1979).
[4] State v. Hayes, supra, was reversed, but on different grounds than concern us here.
[5] This Court's rules (Rule 28) require the district attorney, in every case where the death penalty has been imposed, to file a list of each first degree murder case in the district in which the sentence was imposed after January 1, 1976 to enable this Court to review the imposed sentence for proportionality with other cases. This local comparison scheme has been upheld against constitutional attack notwithstanding a contrary view by at least one member of this Court. See State v. Baldwin, 388 So.2d 664 (La.1980), Justice Dennis concurring.

In any event, this defendant, considering the three aggravating circumstances attendant with this case and the fact that a death sentence has not heretofore been recommended in Jefferson Parish, would not likely be aided by comparison for proportionality statewide rather than parishwide.
[1] Judicial restraint is particularly important in the area of absolute and inflexible prohibitions, since such rules are inconsistent with the very nature of the judicial process. Moreover, when an absolute prohibition is adopted, as the Legislature did in C.Cr.P. art. 770's prohibition against commenting on the defendant's failure to testify, the court must decide in each case whether the remark constitutes a prohibited comment. See, for example, State v. Fullilove, 389 So.2d 1282 (La.1980).
[1] C.Cr.P. art. 905.9 provides:

"The Supreme Court of Louisiana shall review every sentence of death to determine if it is excessive. The court by rules shall establish such procedures as are necessary to satisfy constitutional criteria for review."
[2] The following are excerpts from some of the cases:

"The inevitable effect of the prosecutor's remarks to the judge in the jury's presence was to encourage the jury to attach diminished consequence to their verdict, and to take less than full responsibility for their awesome task of determining life or death for the prisoners before them." Prevatte v. State, supra. Such comments "suggested to the jury that its responsibility for deciding appellant's fate was lessened. It was erroneous and extremely prejudicial for the solicitor to imply to the jury that its burden could be passed on to a higher court." State v. Gilbert, supra. "[R]emarks by a prosecutor about appellate safeguards suggest to the jury that it may pass the responsibility for a death sentence on to a higher court, and require reversal of the sentence. State v. Tyner, 258 S.E.2d 559 (S.C.1979). "Nothing can be permitted to weaken the jurors' sense of obligation in the performance of their duties." People v. Johnson, supra. "[R]eminding the jury of the existence of an appellate tribunal, to which the case with which they were then charged might be carried up, if the evidence offered by the prisoner had been wrongfully withheld-however well intentioned, was calculated, nevertheless, to lessen their sense of their own responsibility.... Such statements constitute prejudicial error in cases in which a verdict of guilty exposes the accused to the death penalty." Prevatte v. State, supra.
[3] In State v. Sonnier, 379 So.2d 1336 (La.1980) this Court looked at the effect of reading to the jury the law on parole or work release. While the Court reversed defendant's sentence, finding that the jury may have been misled because they were not given complete information, the Court did not take the position that such information was irrelevant to the jury's considerations. However, that argument was not raised in that case.