CALABRIA, Judge.
Dennis Edward Fessler, II, ("defendant") appeals from a 4 April 2003 conviction of first-degree murder in Moore County Superior Court. We find no error.
On 31 August 2001, Jerry Griffith ("Griffith") and Brad Urik ("victim") arranged to meet defendant to purchase thirteen pounds of marijuana. Griffith and the victim carried $6000, arrived at defendant's home near dusk, and awaited defendant's arrival in his gravel driveway. A few minutes later, defendant and Joe Hill ("Hill") arrived. While exiting his car, defendant put a .22 caliber target pistol in the back waistband of his pants. The men greeted one another, and defendant and Hill raised the front oftheir shirts. Defendant then motioned to Griffith and the victim to lift their shirts. Testimony from Griffith and Hill tended to show that neither Griffith nor the victim was carrying a weapon. Griffith and the victim lifted their shirts, and as they turned their backs toward defendant, defendant fired his pistol. Griffith jumped behind the trunk of his car. The victim walked approximately ten steps and fell to the ground next to defendant's driveway. Defendant stood over the victim, who had his arm raised, and fired several shots. Griffith ran toward some woods, and defendant jogged after him firing his pistol. Griffith eluded defendant and soon thereafter stopped a motorist, who called law enforcement. Meanwhile, Hill moved past the victim, who was not moving, and ran from the scene into a separate area of the woods. After chasing Griffith, defendant walked back to the victim, who was lying face down on the ground and fired two shots into the back of his head. After hearing sirens, defendant hid in some woods. He returned to his home the next day and telephoned the police, who arrived shortly thereafter and arrested him.
Defendant testified he was acting in self-defense. He saw Griffith draw a gun. He drew his pistol, fired, and hit the victim in the back by mistake. He later went back and shot the victim twice in the back of the head because he thought the victim, like Griffith, had a gun. He then searched the victim and found he was unarmed and became scared because he had shot an unarmed man.
On appeal defendant asserts the trial court: (I) erred by failing to exercise its discretion in denying the jury's requestduring deliberations to review defendant's testimony; (II) committed prejudicial error by failing to conduct the jury to the courtroom to address their request for the statements made to law enforcement by Griffith, Hill, and defendant; and (III) erred by informing and allowing the prosecutor to inform prospective jurors that the State was not seeking the death penalty.
I. Discretion to Grant or Deny a Review of Testimony
Defendant asserts the trial court erred by failing to exercise its discretion in denying the jury's request during deliberations to be provided with defendant's testimony. Defendant argues the trial court improperly denied the request based on the unavailability of the transcript and, thus, failed to exercise its discretion. We disagree.
In pertinent part, N.C. Gen. Stat. § 15A-1233(a) (2003) states, "If the jury after retiring for deliberation requests a review of certain testimony[,] . . . [t]he judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury . . . ." (Emphasis added). "Whether to allow the jury to review a witness's testimony is a matter solely addressed to the discretion of the trial court." State v. Lee, 335 N.C. 244, 290, 439 S.E.2d 547, 571 (1994). If the trial court denies the jury's request to review testimony "upon the ground that the court has no power to grant the motion in its discretion, the ruling is reviewable. In addition, there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as tothe question presented." State v. Lang, 301 N.C. 508, 510, 272 S.E.2d 123, 124-25 (1980) (citation omitted).
By way of contrast, no error occurs when the record shows that "the trial court was aware . . . it had discretion to produce the transcript . . . [and] that the trial court exercised its discretion when deciding not to honor the jury's request." State v. Harden, 344 N.C. 542, 563, 476 S.E.2d 658, 669 (1996); State v. Lawrence, 352 N.C. 1, 27, 530 S.E.2d 807, 824 (2000). A trial court's grant of a request to review an exhibit and denial of a request to review certain testimony indicates the trial court realized it had discretionary authority to grant or deny jury requests. State v. Buckner, 342 N.C. 198, 232, 464 S.E.2d 414, 433 (1995). Our Supreme Court has also stated that "the trial court's instruction that the jurors rely upon their individual and collective memory of the testimony is indicative of [an] exercise of its discretion." Harden, 344 N.C. at 563, 476 S.E.2d at 669.
In the instant case, the jury's request to review defendant's testimony also included a request to review an exhibit. The trial court granted the jury's request to review the exhibit but denied the request to review defendant's testimony by explaining to counsel, "I believe I will have to respectfully deny that and just tell them they'll have to rely on their best recollection." The trial court's granting of the request to review an exhibit and denial of the request to review testimony indicates an exercise of discretion. Moreover, the trial court's statement to counsel indicates an exercise of discretion. Accordingly, we find thetrial court did not deny the jury's request based solely on the unavailability of the transcript but, rather, the trial court exercised discretion.
II. Conducting the Jury to the Courtroom
Defendant asserts the trial court committed prejudicial error by failing to conduct the jury to the courtroom, as required by N.C. Gen. Stat. § 15A-1233(a) (2003), before sending to the jury room Griffith's, Hill's, and defendant's statements made to law enforcement. We find no prejudice to defendant.
In pertinent part N.C. Gen. Stat. § 15A-1233(a) states, "If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom." In State v. Nobles, 350 N.C. 483, 515 S.E.2d 885 (1999), our Supreme Court addressed the same issue on facts remarkably similar to the instant case. In Nobles, our Supreme Court observed and held that:
In order to be entitled to a new trial, defendant must demonstrate that there is a reasonable possibility that a different result would have been reached had the trial court's error not occurred. Defendant cannot meet this burden. Not only did defendant's counsel agree with the trial court when it erroneously thought that it had discretion whether to bring the jury to the courtroom, but there was unanimous agreement among the State, the defendant, and the trial judge concerning the items requested by the jury; and the prosecution and defendant consented to permitting the jury to have those items. Therefore, defendant has not met his burden of showing prejudice as a result of the trial court's failure to follow the requirements of N.C.G.S. § 15A-1233(a).
Id. at 506, 515 S.E.2d at 899 (citation omitted). In the instant case, the State, defendant's counsel, and the trial court agreed to present the three witnesses' statements to the jury. Furthermore, the State and defendant's counsel consented to submitting those statements to the jury in the jury room. We find this case sufficiently analogous to Nobles and hold defendant has failed to show he was prejudiced by the trial court's failure to conduct the jury to the courtroom.
III. Informing Prospective Jurors the Case is Non-Capital
Defendant asserts the trial court committed reversible error by informing and allowing the prosecutor to inform prospective jurors that the State was not seeking the death penalty. Under N.C. Gen. Stat. § 15A-1214(b) (2003), a judge may address "prospective jurors . . . concerning [their] general fitness and competency . . . [to] serve as jurors in the case." Similarly, under N.C. Gen. Stat. § 15A-1214(c) (2003), "the prosecutor and the defense counsel . . . may personally question prospective jurors individually concerning their fitness and competency to serve as jurors in the case . . . ."
In the instant case, while addressing the jury pool, the judge stated, "The State is not seeking the death penalty in this case. . . . And for this reason, it will not take nearly as long as the typical capital murder trial. . . . [O]ur best estimate is that this trial will conclude by Friday." During voir dire, the prosecutor similarly addressed a prospective juror and asked, "And you've heard the charge; it's first-degree murder but it is not adeath penalty case. We should be finished by Friday. . . . Would that be any problem for you?" The prosecutor also questioned two other prospective jurors to be certain they understood the nature of the charge and that the death penalty would not be imposed, in order to determine if they would have "a problem being fair." The prosecutor asked: (1) "Do you understand this is a first-degree murder case . . . but it's not a death penalty case? Anything about those charges . . . anything to give you [a problem being fair]" and (2) "Other than [your leaving this Sunday evening], would you have any problem? You've heard questions about drugs and different things. . . . And you know this is not a death penalty case."
The trial court and prosecutor informed prospective jurors of the nature of the trial in order to give them an estimate of the amount of time the trial might take and to determine if a time conflict might disqualify a prospective juror. The prosecutor also questioned two prospective jurors as to whether they understood the nature of the charges and that the death penalty would not be imposed if the jury were to return a verdict of guilty, as part of determining their fitness and competency to serve as jurors.
Nonetheless, defendant argues that the trial court's and prosecutor's comments implied to the jury that the State had already given defendant "a break" by not seeking the greater penalty and lessened the jury's responsibility to decide the case on the evidence. For this proposition defendant relies on State v. Hines, 286 N.C. 377, 211 S.E.2d 201 (1975), State v. White, 286N.C. 395, 211 S.E.2d 445 (1975), and State v. Jones, 296 N.C. 495, 251 S.E.2d 425 (1979). In these cases, our Supreme Court held that two types of statements in capital cases prejudice the defendant. First, statements in a capital case are prejudicial when "professedly made to `ease' the `feelings' of a juror concerning her misgivings regarding the death penalty, suggest[ing] to the jurors, both prospective and seated, that if verdicts of guilty were returned, the mandatory death penalty, in all probability, might not or would not be imposed." Hines, 286 N.C. at 386, 211 S.E.2d at 206. Second, statements "suggest[ing] to the jury that they can depend upon either judicial or executive review to correct any errors in their verdict, and to share their responsibility for it, [are] an abuse of privilege and prejudicial to the defendant." White, 286 N.C. at 403, 211 S.E.2d at 449-50. See also Jones, 296 N.C. at 497, 251 S.E.2d at 427 (finding prejudicial error, in a capital case, where "the district attorney stated, `Now you know, if you do err in this case he [defendant] has the right of appeal'").
In the instant case, the statements and questions were not made to ease the minds of the jury concerning the punishment sought nor were they made to suggest that the punishment sought might not be instituted. In addition, they did not suggest that a judicial or executive review could correct errors in the jury's verdict. Accordingly, we hold the purpose of the trial court's statements and the prosecutor's questions fall within the guidelines of statements and questions allowed under North Carolina law and donot result in the type of prejudice present in Hines, White, and Jones.
For the foregoing reasons, we find that defendant had a fair trial free from prejudicial error.
No error.
Judges WYNN and LEVINSON concur.
Report per Rule 30(e).