**Benjamin A. BERRY, Petitioner,**

v.

**John T. KING, Secretary of Department of Corrections and Ross T. Maggio, Warden State Penitentiary.**

**Civ. A. No. 83–5259.**

United States District Court,
E.D. Louisiana.

Nov. 28, 1983.

Samuel Dalton, Jefferson, La., for petitioner.

William C. Credo, III, Asst. Dist. Atty., Metairie, La., for John Mamoulides, Dist. Atty., Gretna, for defendant.

## MEMORANDUM OPINION

FELDMAN, District Judge.

This matter came before this Court on the Petition of Benjamin A. Berry for a Writ of Habeas Corpus and Application for Stay of Execution based upon the Petition for the Writ of Habeas Corpus and on the alternative ground that Petitioner did not have an opportunity to exhaust his State court remedies in connection with the question of whether he has received a constitutionally adequate death sentence review (which is also called a proportionality review). Having previously granted Petitioner Berry's motion to proceed in *forma pauperis*, the Court by its order of October 27, 1983 stayed Berry's execution on the two grounds set forth therein, and denied the Petition and the Application for a stay, as well as a Certificate of Probable Cause, as to all other grounds.

In view of the public interest in seeing to it that the sentences of convicted individuals are not thwarted by perceived abuses of the judicial process, it is the purpose of this opinion to explain those grounds which, in light of recent Supreme Court and Fifth Circuit actions, required that a stay be granted.

### PETITIONER'S DAYS IN COURT

This matter comes before this Court after exhaustive and reasoned consideration by the Louisiana State Courts. At first blush it would appear that Petitioner has had his day in court, many, many in fact.

On September 15, 1978 Petitioner Berry was indicted for First Degree Murder. Berry was charged with entering a bank in Jefferson Parish to commit an armed robbery, and during the course of that robbery murdering an off-duty Jefferson Parish deputy sheriff employed as the bank's security officer. On October 26, 1978, a jury trial was held in 24th Judicial District Court. Mr. Fred A. Blanche, III represented Berry. Under the bifurcated procedure required by Louisiana law, the jury first found Berry guilty of First Degree Murder and then in a separate hearing, sentenced him to death. La.R.S. of 1950, 14:30.

Defendant's counsel, Mr. Blanche, made a timely motion for a new trial based essentially on three grounds: First, that the

prosecutor's remarks during closing argument were inflammatory and improper; second, that the prosecution misrepresented the nature of its photographic evidence, and, finally, by counsel's own "admission", his representation of Mr. Berry could have been "more coherent and accurate" and, therefore, Berry was not adequately represented at his murder trial. The Court denied the motion, and confirmed the jury's sentence.

Berry, still represented by Mr. Blanche, then perfected an appeal of his conviction and sentence to the Louisiana Supreme Court. On appeal he argued that the jury selection standards failed to fulfill the requirements set out in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); that the trial court erred by not appointing a sanity commission to hold a sanity hearing; that the jury should have been charged that the victim was not, at the time of the murder, a peace officer; that the trial court erred in allowing the State to argue twice to the jury during the sentencing phase while allowing the defense only one argument; that the trial judge should have declared a mistrial after the prosecution made improper remarks during closing argument; and that defense counsel failed to adequately present the case. In a lengthy and well reasoned opinion the Louisiana Supreme Court rejected all of Berry's contentions. *State v. Berry*, 391 So.2d 406 (La.1980). The Court also conduced a district based review of the death sentence meted out by the jury. 391 So.2d at 416–418. A petition for rehearing was denied. 391 So.2d at 418.

Berry's Petition to the United States Supreme Court for a Writ of Certiorari was based solely upon the alleged impropriety of the prosecution's closing argument. The Supreme Court denied the Writ. *Berry v. Louisiana*, 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). At this time Mr. Blanche was still acting as Berry's attorney.

Berry's procedural dual with Justice had just begun.

On March 12, 1983 the 24th Judicial District Court enrolled Mr. Samuel Dalton as Berry's new counsel of record and relieved Mr. Blanche of his duties. Mr. Dalton filed a Petition for the Great Writ of Habeas Corpus in the 24th Judicial District Court. Petitioner raised essentially five claims in his petition in the State Court: (1) That his trial counsel, Mr. Blanche, was ineffective and inadequate. In support of this contention Petitioner made numerous factual allegations of Mr. Blanche's incompetence. (2) The jury was not given a copy of the statutory list of aggravating and mitigating circumstances while they were deliberating during the penalty phase of the trial. (3) That the State suppressed exculpatory and mitigating evidence. (4) That the prosecutor improperly made reference to the appellate court's power to review the sentence imposed by the jury. (5) That defense counsel improperly and without the defendant's consent conceded that he committed the murder.

A hearing was held on Berry's request for a Writ of Habeas Corpus in the 24th Judicial District Court. The Court found that Mr. Blanche rendered reasonably effective counsel to Mr. Berry and had not used drugs during the trial, as Berry had alleged. Accordingly, the Court denied the petition after making specific factual findings.

Petitioner appealed the denial of that petition, and on May 26, 1983 the Louisiana Supreme Court issued its opinion. *State v. Berry*, 430 So.2d 1005 (La.1983). After a comprehensive and painstaking review of the Petitioner's allegations and the record of the hearing held before Judge Wicker, the Louisiana Supreme Court found that Berry's petition was without merit. Thereafter, Berry's execution date was fixed at between 12 midnight and 3:00 a.m. on November 1, 1983.

On October 25, 1983 at approximately 1:30 p.m. this Court received four documents from the Petitioner. The first document was a motion for leave to proceed in *forma pauperis*. By an order of October 25, 1983, this Court granted that motion.

The second and third documents were a Petition for a Writ of Habeas Corpus and a Memorandum in support of the Petition. In these documents Petitioner presented to this Court all of the claims that he had previously brought to the attention of the State Courts in his earlier Petition for a Writ of Habeas Corpus. The Petition also claimed that the jury selection method used in his trial fell below the standards established in *Witherspoon, supra.* This claim, however, had been raised by Berry on his initial direct appeal (although it was not raised in his subsequent State Court writ), and the Louisiana Supreme Court rejected that contention. 391 So.2d at 410–411. Thus, all the contentions raised in the new Federal Court Petition were previously ruled on by both the 24th Judicial District Court, and the Louisiana Supreme Court.

The fourth document presented to this Court was an Application for a Stay of Execution in which Petitioner raised a wholly new and sixth ground for a stay. Petitioner alleged that he had not received a constitutionally mandated death sentence review. Berry further pointed out that the U.S. Supreme Court had granted a Writ of Certiorari in the case of *Harris v. Pulley,* 692 F.2d 1189 (9th Cir.1982) *Cert.* granted — U.S. —, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983) and that the Court's decision in *Pulley* will possibly establish clear guidelines for the type of death sentence review that must be undertaken before a death sentence can be constitutionally imposed. Petitioner argued that in light of the Supreme Court's recent grant of review in *Pulley,* this Court should stay the Petitioner's execution until he has had the opportunity to exhaust his State court remedies in connection with this new issue.

### EXHAUSTION OF STATE REMEDIES

Except for the proportionality review issue, all of the claims raised in Berry's petition have previously been presented to the Louisiana State Courts, and no further review of those claims can be obtained in the State Courts. Thus, Petitioner has fully exhausted his State court remedies as to those issues, and those matters are now properly before this Court. 28 U.S.C. §§ 2254(b)–(c); *Ex Parte Royale,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886).

█ This Court is deeply concerned that the Federal Courts have become a vehicle for delaying the imposition of Justice. Although the public, joined by this Court, become frustrated by the seemingly endless number of chances individuals convicted of crimes have to thwart the ends of Justice by continually raising the same issues over and over to a variety of courts, it is important to underscore that this condition is made possible by the mandate of Congress. Simply stated, one claiming the right to the ancient Writ of Habeas Corpus must first present those claims to the State Courts before that person may come for relief to the Federal Courts. 28 U.S.C. § 2254(b). Whether, as has been stated elsewhere, that procedural requirement really serves to keep in balance the delicate interests of our State-Federal dichotomy is a question this Court would hope to discuss another day. But it is clear that the tedious procedure of requiring the States to make the first inquiry is sacred, and not the making of the Courts. As Judge Hodges stated so aptly:

> "The nature of the case, and others like it, has attracted intensive publicity which has, in turn, served to fuel a growing public frustration concerning the administration of criminal justice in the courts. The Chief Justice of the United States in his last annual address to the American Bar Association recognized and gave voice to the same public frustration; and, to the extent that this very real exasperation is fomenting an overall loss of confidence on the part of the public in its court system, particularly the federal courts, those who supply the public with information and opinion should be particularly careful to impart only that information which is accurate in every detail. Unfortunately, many lay persons and even some lawyers and judges do not seem to understand the historical or the contemporary role of the federal courts

in habeas corpus proceedings involving state prisoners, and that lack of understanding has caused the public to be the recipient of a considerable quantity of misinformation and erroneous innuendo concerning the proper institution of government upon which responsibility should be placed for both the condition and the cure.

The Constitution of the United States, Article I, Section 9, Clause 2, the so-called non-suspension clause, provides as follows:

'The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.'

Many seem to believe that this constitutional provision is the direct jurisdictional base of habeas corpus proceedings involving state prisoners. That conclusion is open to substantial doubt. Until 1867, or during the first seventy-eight years of constitutional government, the writ of habeas corpus in the federal courts was governed by the Judiciary Act of 1789 and extended only to prisoners held in custody by the United States, not the several states. Furthermore, even with respect to federal prisoners, the scope or power of the writ was limited to an inquiry as to the jurisdiction of the sentencing tribunal.

In 1867 the availability of the writ of habeas corpus in the federal courts was extended to state prisoners by act of congress now embodied in 28 USC § 2254. Even then, however, the early cases limited the reach of the writ to an examination of the jurisdiction of the sentencing court. See *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037 [49 L.Ed.2d 1067] (1976). See also *Schneckloth v. Bustamonte,* 412 U.S. 218, 250, 93 S.Ct. 2041, 2059 [36 L.Ed.2d 854] (1973) (Powell, J., concurring), and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497 [53 L.Ed.2d 594] (1977).

Recently, in *Swain v. Pressley,* 430 U.S. 372, 94 S.Ct. 1224 [51 L.Ed.2d 411] (1977), dealing with the statute creating the Superior Court of the District of Columbia, the Court's decision suggests that the District Courts might well be relieved, with constitutional impunity, of any jurisdiction to issue writs of habeas corpus at the behest of state prisoners so long as state law affords an adequate and effective collateral remedy to test the legality of the petitioner's detention.

In any event, whether the constitution has etched the writ in stone to any degree or not at all is not the point here. It is enough that the existing *statutes,* 28 USC §§ 2241 and 2254, afford the remedy and thus *require* the District Courts to entertain a state prisoner's application for a writ of habeas corpus if it is claimed that he is detained in custody in violation of the Constitution or laws or treaties of the United States. Moreover, the fact that the state courts have heard and adjudicated the constitutional claim does not generally preclude the authority and duty of the District Court to make an independent determination of the constitutional issue. Indeed, as a matter of comity to the state courts, the statute requires that all existing state remedies be exhausted *before* the petition is filed in the federal court so that, of necessity, the habeas proceeding is always a rehashing of the constitutional issues already decided in the state courts.

The point of this discussion is that, while there is great clamor for statutory redress of our present law concerning habeas corpus relief, all involved should remember (or should be clearly informed, as the case might be) that the existing law is itself of *statutory* origin. It was not created, and cannot be amended, by the courts. Given the statute it would be a gross violation of law and of a judge's oath of office if he should arbitrarily decline to entertain a proper petition filed under it; and to the extent there is widespread belief that the federal courts have somehow "bootstrapped" their own authority to indiscriminately meddle in state court criminal prosecutions—a belief nurtured by inferences to that effect in the public press—unjustified and un-

necessary damage is being done to the very system of judicial administration in which all of us are so vitally interested. Those who wish to debate the need for change should focus their attention and the brunt of their remarks upon the statute and the Congress, not the Courts.

In addition to substantive issues, there is also public concern about the length of time taken by the courts in disposing of habeas corpus proceedings. Quite apart from the notoriously crowded dockets of the federal courts, however, a circumstance which is also beyond the control of the courts, there is no provision in 28 USC § 2254 requiring expedited consideration whereas there are at least two dozen other statutes which do require that preference be given to specified classes of cases such as, for example, criminal cases governed by the Speedy Trial Act, 18 USC § 3161." (emphasis in text) *Darden v. Wainwright*, 513 F.Supp. 947 (M.D.Fla.1981)

## POWER TO GRANT THE STAY ON AN UNEXHAUSTED CLAIM

Berry's claim that he never received a constitutionally mandated death sentence review is new and has never been presented to the State Courts because courts have only recently begun to make important observations about the issue. In his Petition for a stay of execution Berry asked this Court to grant a stay so that he can seek the required State court review of this issue. It should be emphasized that the merits of this issue are not before this Court, nor does this Court mean to imply any opinion on the merits of this issue. The Fifth Circuit has held that a prisoner under an impending sentence of death may obtain a stay of execution if a stay is needed to afford him the opportunity to present his claims to the State Courts. *Spencer v. Wainwright*, 403 F.2d 778 (5th Cir.1968) In *Spencer* the Court approved a District Court order staying an execution to allow the State Courts to review a new, unexhausted, claim. *See also* 17 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure*, § 4264 (1978). Here this ques-

tion is so new that Berry had no opportunity to present it in his earlier petition to the State Courts. And the law on this issue has been a meandering maze of inconclusive and confusing judicial pronouncements.

## PROPORTIONALITY REVIEW

The term "proportionality review" is the rubric that is used to refer to essentially two inquiries. First, has the accused received a sentence that is proportional to the crime he or she has committed? Second, have similarly situated defendants received the same punishment? The law in this area is currently quite unclear and in recent months numerous conflicting decisions involving the adequacy of a defendant's proportionality review have been rendered.

When this Court originally issued its order staying Berry's execution the controlling case law on the question of proportionality was the Fifth Circuit's opinion in *Williams v. Maggio*, 719 F.2d 730 (5th Cir. 1983). In that case the Fifth Circuit issued a stay of execution on the ground that the Supreme Court's decision to grant certiorari in *Pulley v. Harris*, —— U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983) could be expected to provide a comprehensive review of the law concerning proportionality, and "with a person's life at stake, we must await that review or further direction from the Supreme Court." *Williams v. Maggio*, 719 F.2d 730 at p. 733.

Following the mandate of the Court of Appeals for the Fifth Circuit, this Court granted a stay to Berry to allow him to present this issue to the Louisiana Courts. After this Court's decision in *Berry*, the U.S. Supreme Court reviewed the stay issued by the Fifth Circuit to Williams, and in *Maggio v. Williams*, —— U.S. ——, 104 S.Ct. 311, 78 L.Ed.2d 43 (1983) the Court reversed the Fifth Circuit's decision and dissolved Williams' stay. The Court held that the Fifth Circuit en banc review of the Louisiana Supreme Court's death sentence review (proportionality of William's sen-

tence) was sufficient; hence, further review after the decision in *Pulley* was, in the Court's opinion, unnecessary. Three Justices dissented.

 As previously noted Berry's application for a stay did not ask this Court to review the merits of his proportionality claim; he only asked this Court to grant the stay to enable him to present this issue to the Louisiana Courts. The Supreme Court's decision in *Williams* does not affect this Court's decision to issue a stay to allow Berry to present his claim to the Louisiana Courts. Unlike Williams, Berry has never had the opportunity to have the merits of this claim evaluated. In *Williams* the United States Supreme Court placed a heavy emphasis on the fact that Williams' proportionality claim received extensive judicial review. In Williams' death sentence review the Louisiana Supreme Court was able to compare Williams' offense with eleven First Degree Murder convictions, three receiving the death sentence. The Court specifically noted that the facts in all of the death sentence cases were "strikingly similar". 383 So.2d at 375.

Berry's death sentence was compared with only four First Degree murder cases, none resulting in the death sentence. 391 So.2d at 406. Since the merits of this claim are not before this Court, I do not express any opinion on ultimate merits of Berry's proportionality claim. *Spencer, supra.* This Court does however conclude that this claim is not so lacking in merit that reasonable jurists could not differ as to its merits. *Barefoot v. Estelle,* 463 U.S. ──, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Thus, this Court is obliged to grant Petitioner a stay so that the Louisiana Court's can decide the merits of Berry's claim.

### EFFECTIVE COUNSEL

 As previously noted, Berry claims that, in violation of the Sixth Amendment of the United States Constitution, Mr. Blanche failed to provide him competent counsel. Petitioner offers many factual allegations in support of this contention. The Louisiana Courts have carefully and conscientiously reviewed each of Berry's charges and found each to be without merit. The extensive inquiry of the Louisiana Courts leads this Court to consider such charges to be frivolous here. *See, State v. Berry,* 430 So.2d 1005 (La.1983). This case, however, poses a difficult and somewhat unique problem. In *Strickland v. Washington,* 693 F.2d 1243 (5th Cir.1982) the Court issued an opinion that established the standards for evaluating claims regarding ineffective counsel. Normally this Court would evaluate the Petitioner's claims in light of that decision. The United States Supreme Court, however, recently granted a Writ of Certiorari in *Strickland v. Washington,* ── U.S. ──, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), and one of the questions presented was, "Has court of appeals ... applied the correct standards for review for claims of ineffective counsel?" 51 U.S.L.W. 3866 (June 7, 1983).

Further, in another case set for argument before the United States Supreme Court, *U.S. v. Cronic,* 459 U.S. ──, 103 S.Ct. 1182, 75 L.Ed.2d 430 (1983) the Court expects to resolve questions relating to the standard of review to be used in evaluating claims of ineffective counsel. *See Maggio v. Williams,* slip opinion at 5.

In light of the Supreme Court's decision to grant certiorari in *Strickland* and *Cronic* the Court also decided to stay another Louisiana prisoner's death sentence because he has raised a substantial challenge to the effectiveness of his trial counsel. *Baldwin v. Maggio,* 464 U.S. ──, 104 S.Ct. 45, 77 L.Ed.2d 1458 (1983). Berry's petition raises a serious challenge to the effectiveness of his trial counsel, and because of the Supreme Court's decision to stay executions when the petitioner has raised a serious question of his trial counsel's effectiveness, this Court was obliged to stay Berry's execution until the decisions in *Strickland* and *Cronic* are rendered. Thus even though the merits of this claim were carefully considered and rejected by the State Courts, this Court was compelled to grant the stay.

A hearing, if necessary, will be scheduled as soon as the Supreme Court decides the two issues.

## PETITIONER'S OTHER CLAIMS

In his Petition Berry also claims that his conviction or, in the alternative, his death sentence, should be vacated because of a host of other errors. This Court has studied the opinions of the 24th Judicial District, and the two opinions issued by the Louisiana Supreme Court in connection with Berry's claims and believes that those other claims are so lacking in merit that no reasonable jurist could come to a conclusion that is different from the conclusion reached by the Louisiana Courts. *Barefoot v. Estelle*, 463 U.S. ——, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). As to these other claims Berry has not made a substantial showing of the denial of a federal right. Accordingly all of petitioner's other claims were rejected by this Court and no Certificate of Probable Cause was issued. *See Barefoot*, supra; *Fabian v. Reed*, 714 F.2d 39 (5th Cir.1983)

Thus, although Berry's execution was stayed, his claims to relief because of alleged constitutional violations have been substantially narrowed to two serious questions which should be resolved soon. This Court finds his other claims are frivolous, for the reasons stated earlier in this opinion. Perhaps cutting the issues in Berry's case will quicken the pace of Justice at least a bit. When a life is at stake, Judges ought not be trigger happy; but they should not become manipulated.